# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Action Alliance of Senior Citizens, Gray Panthers

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   88888
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Center for Medicare Advocacy, Inc.
1101 Vermont Ave., N.W., Suite 1001
Washington, DC 20005
(202) 216-0028

## DEFENDANTS

Michael Leavitt, Secretary of Department of Health and Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
- [ ] 410 Antitrust

○ **B. Personal Injury/Malpractice**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [x] 890 Other Statutory Actions (If Administrative Agency is Involved)

● **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food &Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ◉ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Challenge to failure of Secretary of HHS to notify of waiver rights. 42 USC 1395gg(c).

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ [____]   Check YES only if demanded in complaint
JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE Sept 15, 2006   SIGNATURE OF ATTORNEY OF RECORD *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS<br>2740 N. Front Street<br>Philadelphia, PA 19133<br><br>GRAY PANTHERS<br>1612 K Street, NW, Suite 300<br>Washington, D.C. 20006<br>                      Plaintiffs,<br><br>v.<br><br>MICHAEL LEAVITT, Secretary of Department<br>Of Health and Human Services<br>200 Independence Avenue, SW<br>Washington, D.C. 20201<br>                      Defendant. | C.A. No.<br><br>COMPLAINT FOR<br>DECLARATORY,<br>INJUNCTIVE AND<br>MANDAMUS RELIEF |

## I. **INTRODUCTION**

1.      This is an action against the Secretary of the Department of Health and Human Services ("Secretary") as the official responsible for the Department's refusal to inform hundreds of thousands of Medicare beneficiaries of their right to seek waiver of recovery of premium refunds that were paid to these beneficiaries.

2.      Plaintiffs also seek to require the Secretary to offer oral hearings to beneficiaries who seek waiver prior to recovering any portion of the premiums that were paid to them.

3.      A Medicare processing error resulted in approximately 230,000 Medicare beneficiaries receiving refunds in their August 2006 Social Security checks for the premiums paid for their participation in a Medicare Part D drug plan. By form letter sent

out to each of these beneficiaries in late August or early September 2006, the beneficiaries were informed of the amount that had been incorrectly paid to them and of their obligation to return that amount. Beneficiaries were given several options for returning the payment or requesting repayment by installment, with a deadline of September 30, 2006. They were not informed of their right to request that recovery of the payment be waived and of how to make that request.

4. Plaintiffs include organizations whose members include many Medicare beneficiaries who received these payments and who may qualify to have recovery of these payments waived, and which provide assistance to Medicare beneficiaries. They challenge the Secretary's actions as violative of the Medicare statute, regulations, and guidelines, and of the Due Process Clause of the Fifth Amendment. They seek declaratory, injunctive, and mandamus relief requiring the Secretary to inform the affected beneficiaries of their right to seek waiver of recovery, which includes the right to a pre-recoupment oral hearing on the waiver request.

5. Plaintiffs request a temporary restraining order prohibiting the Secretary from sending out, or posting on a website, additional communications to, or about, beneficiaries who received the payments. They request a preliminary injunction requiring the Secretary to cease attempting to recover the premium payments that were incorrectly refunded, and to repay to beneficiaries those amounts that have been recovered, until he sends a new letter to beneficiaries explaining their right to seek waiver of recovery and extending the deadline to take action, including requesting waiver, until thirty days after that new letter is sent out.

## II.   JURISDICTION

6.   Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g), which is incorporated into the Medicare statute by 42 U.S.C. §§ 1395ff(b)(1)(A), 1395w-22(g)(5), and 1395w-104(h)(1), and also pursuant to 28 U.S.C. §§ 1331 and 1361.

## III.   PARTIES

7.   Plaintiff ACTION ALLIANCE OF SENIOR CITIZENS (hereinafter, Action Alliance), with its principal office in Philadelphia, Pennsylvania and a membership throughout the Commonwealth of Pennsylvania, which includes many Medicare beneficiaries enrolled in Part D prescription drug plans, has as its mandate to accord to senior citizens lives of dignity and freedom from want and fear by providing education and advocacy on issues affecting the elderly.

8.   Plaintiff THE GRAY PANTHERS, with its principal office in Washington, D.C., is a national organization with 25 chapters located throughout the country. It has a membership of about 20,000 people, the large majority of whom are Medicare beneficiaries enrolled in Part D prescription drug plans.

9.   Defendant MICHAEL O. LEAVITT is the Secretary of the Department of Health and Human Services (HHS). In that capacity he has responsibility for the conduct and policies of HHS, including responsibility for the Centers for Medicare & Medicaid Services (CMS), which administers the Medicare program. He is sued in his official capacity.

## IV.   LEGAL FRAMEWORK

### A.   Medicare and the Part D prescription drug option

10. Enacted in 1965 as Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, Medicare is funded by the federal government through beneficiary premiums, payroll taxes, and general revenues, and provides health care coverage to 43 million eligible individuals who are either age 65 or over or have long-term disabilities or specified medical conditions. Through Parts A and B, Medicare provides coverage for in-patient hospital stays, doctor and clinic visits, and certain other reasonable and necessary services and items. Through Part C, the Medicare Advantage program, beneficiaries may opt to enroll in a managed care plan in lieu of the traditional fee-for-service approach.

11. Pursuant to a new Part D set out at 42 U.S.C. §§ 1395w *et seq.* and starting January 1, 2006, Medicare now offers access to prescription drug coverage. The coverage is provided entirely through private prescription drug plans (PDPs) and Medicare Advantage plans (MA-PDs).

12. Premiums to pay for beneficiaries' participation in the PDPs and MA-PDs may be but are not required to be deducted from their Social Security checks.

B. **Waiver of recovery**

13. Federal benefit programs have statutory provisions that prohibit recovery of payments incorrectly made to beneficiaries when the beneficiary was not at fault and recovery either would be "against equity and good conscience" or would defeat the purposes of the statute. For instance, when Social Security benefits authorized pursuant to Title II of the Social Security Act are overpaid, recovery is prohibited by the waiver provision of that Title (42 U.S.C. § 404(b)) when beneficiaries satisfy the criteria set out in the previous sentence.

4

14. The courts interpreting that provision, and others similar to it, have held that these mandatory waiver provisions require that the beneficiary be notified in writing of his right to waiver of the overpayment and have an opportunity for a pre-recoupment oral hearing before any recovery can be effected. See, e.g., *Elliott v. Weinberger*, 564 F.2d 1219, 1235-1236 (9th Cir. 1977) (requiring notice), aff'd in part, rev'd in part on other grounds sub nom. *Califano v. Yamasaki*, 442 U.S. 682, 693-697 (1979) (requiring opportunity for pre-recoupment oral hearing).

15. The Medicare statute has such a waiver provision prohibiting recovery in these circumstances:

> There shall be no adjustment as provided in subsection (b) of this section (nor shall there be recovery) in any case where the incorrect payment has been made ... with respect to an individual who is without fault ... if such adjustment (or recovery) would defeat the purposes of subchapter II or subchapter XVIII of this chapter or would be against equity and good conscience.

42 U.S.C. § 1395gg(c). Medicare regulations repeat this prohibition against recovery in the delineated circumstances. 42 C.F.R. § 405.358.

16. Medicare regulations also require written notice of the right to waiver:

> Whenever an initial determination is made that more than the correct amount of payment has been made, notice of the provisions of [42 U.S.C. § 1395gg(c)] regarding waiver of adjustment or recovery shall be sent to the overpaid individual ....

42 C.F.R. § 405.357.

17. Recognizing these Medicare and Title II requirements, the Social Security Administration has issued directives in its Program Operations Manual System (POMS) when premiums deducted from Social Security payments are incorrectly refunded. The POMS states that

5

> the individual will be notified of the amount he/she erroneously received, asked to return it, and told of his/her right to request relief from repayment of the incorrectly refunded amount.
>
> ....
>
> Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds that are reasonable and necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purposes of Title II (Social Security). Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment ... apply even though the incorrect premium is not a benefit overpayment.

POMS, § HI 01001.330B., C. (posted at

https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0601001330!opendocument).

18.    The Medicare regulations do not offer the opportunity for a pre-recoupment oral hearing.

### V.    FACTUAL STATEMENT

#### A.    Defendant's actions precipitating this lawsuit

19.    For reasons that have not been explicitly stated, but that CMS refers to as "a processing error," about 230,000 beneficiaries who paid the premiums for their PDP or MA-PD plans via a deduction in their monthly Social Security checks received a refund in early August 2006 for those premiums in their Social Security checks or through direct deposit.

20.    By letter sent to each of these beneficiaries in late August or early September 2006, CMS informed each of them of the amount of the "incorrect payment" and provided several options for returning the full amount. (A copy of the generic version of the letter is attached to this Complaint.) The letter further stated that "[y]ou should return this payment by September 30, 2006. If returning the amount in full

presents you with a hardship, you may request to make monthly installment payments for as many as seven months." A toll-free telephone number was provided for those beneficiaries who "would like to discuss this option" of making installment payments.

21.     The letter does not mention the possibility of waiver of recovery, either by explicit use of that term, by a description of that term, or by any reference that could be construed to refer to waiver. Nor does the letter in any way suggest how a beneficiary could request waiver of recovery.

22.     In addition to sending out the letter to the beneficiaries, CMS also sent out or posted on its website a "Tip Sheet" entitled "Information Partners Can Use to Help Beneficiaries with: PREMIUM WITHHOLD REFUND ISSUE". The Tip Sheet informed CMS' Part D drug plan partners of the incorrect payment, of CMS' intention to collect it, of the letter that CMS was sending out to the beneficiaries, and of the ways that the partners could assist beneficiaries in repaying the refund. Like the letter to beneficiaries, the Tip Sheet did not mention the possibility of waiver, explicitly or implicitly. The Tip Sheet is posted at http://www.cms.hhs.gov/partnerships/downloads/PremiumWithholdRefundIssue.pdf.

23.     Furthermore, CMS made available, either by sending or by posting on its website, a description of what had transpired that could be used by organizations for newsletters or other publications. This document provided essentially the same information as in the letter to beneficiaries and in the Tip Sheet. It did not make any mention of the possibility of waiver, explicitly or implicitly.

24.     Via an e-mail letter sent on August 30, 2006 to the CMS Administrator (Dr. Mark McClellan), Judith Stein, the director of the Center for Medicare Advocacy,

7

Inc., whose employee-attorneys represent the plaintiffs in this case, informed him that the letter that CMS was sending out to the affected beneficiaries did not alert them to their right to waiver and requested that it be revised to include that information. Ms. Stein was subsequently contacted by an individual working for Dr. McClellan, who told her that the letter would be sent out without information about the right to waiver.

25.   As CMS has admitted, the premium refund was its error. Accordingly, by definition, all of the approximately 230,000 beneficiaries who received the "incorrect payment" were without fault.

26.   On information and belief, for many, probably most, of the approximately 230,000 Medicare beneficiaries who received the "incorrect payment," it would be against equity and good conscience, or would defeat the purposes of Title II or Title XVIII, to recover that payment.

      **B.**    **Plaintiffs**

27.   Plaintiff Action Alliance organizes grassroots senior groups throughout the Commonwealth of Pennsylvania and includes over 110,000 people in its membership and affiliated clubs. A large percentage of these are Medicare beneficiaries, and most of them are enrolled in a Part D-authorized plan. Action Alliance has an annual budget of $80,000.

28.   Action Alliance is active in promoting information about Medicare among its members and among the wider population of older people throughout Pennsylvania and primarily in the Southeastern Pennsylvania region. It is also active in addressing both individual and systemic issues that Medicare beneficiaries encounter.

29. Action Alliance communicates with its members and with other older people through a newsletter, through frequent presentations at senior housing sites, senior centers and senior citizen clubs, through town meetings, through a monthly membership council meeting for club delegates and general members, and through individual, one-on-one assistance to those who contact the organization. The newsletter is sent to more than 4,100 individuals and organizations. Senior center presentations, approximately monthly, often include segments on the rights of beneficiaries in such plans. In collaboration with Community Legal Services and the Pennsylvania Health Law Project, Action Alliance advises and advocates for individuals with Medicare-related problems.

30. Action Alliance has already heard that individuals in Pennsylvania have received the letter from CMS concerning incorrect payments and is assessing how best to help its members and other Pennsylvania Medicare beneficiaries to understand that they have options not presented to them in the letter. Action Alliance is now evaluating how best to get the necessary information out to its members and others affected in Pennsylvania and to advise and educate them immediately as to the scope and meaning of their rights. Action Alliance expects to take action to this end within the next few days.

31. As a result of the defendant's failure to inform beneficiaries of their rights, members of Action Alliance will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.

32. Furthermore, Action Alliance will have insufficient time in which to analyze information to help its members make informed choices and therefore will not be able to carry out its mandate to its membership. It also will have to devote scarce time,

effort, staff, and other resources to quickly analyze the relevant information and provide as effective assistance to its members and others as it can in a short period of time. The resources devoted to these efforts could be used for other projects to implement Action Alliance's mandate if defendant had carried out his obligations. By failing to carry out these obligations, defendant has expanded the size of the universe of people needing Action Alliance's assistance and the scope of the assistance needed, has interfered with and impeded Action Alliance's mandate, and has reduced the overall effectiveness of its programs and efforts.

33. Plaintiff Gray Panthers is a national organization with 25 chapters located throughout the country. Its mission is to organize people of all ages to fight for social and economic justice, with a specific focus on organizing around health care issues which affect its entire membership. A large majority of its 20,000 members are Medicare beneficiaries, and many of these are enrolled in Part D-authorized plans.

34. Gray Panthers is active in promoting information about Medicare among its members and among the wider population of older people throughout the country and in trying to redress difficulties Medicare beneficiaries have with Part D. In particular, a California chapter has a grant to provide outreach and education about Medicare Part D throughout the state of California.

35. Gray Panthers has been contacted about Part D problems often by members and the general public who do not understand the information and advice they have been provided. Gray Panthers is trying to dispense information and advice to its members and others about what they should do.

36.     As a result of defendant's actions, members of the Gray Panthers will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.

37.     Furthermore, the Gray Panthers will have insufficient time in which to analyze information to help its members and the coalitions with which it works make informed choices and therefore will not be able to carry out its mandate to its membership. It also will have to devote scarce time, effort, staff, and other resources to quickly analyze the relevant information and provide as effective assistance to its members and others as it can in a much shorter period of time. The resources devoted to these efforts could be used for other projects to implement the Gray Panthers' mandate if defendant had carried out his statutory obligations. By failing to carry out these obligations, defendant has expanded the size of the universe of people needing the Gray Panthers' assistance and the scope of the assistance needed, has interfered with and impeded the Gray Panthers' mandate, and has reduced the overall effectiveness of its programs and efforts.

## VI. **INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS**

38.     Plaintiffs will suffer irreparable injury by reason of defendant's actions complained of herein. Members of the organizations will be deprived of income needed to pay for food or other necessities because of their belief that they must repay the refunded premium by September 30, 2006. The plaintiff organizations themselves will be thwarted and impeded in achieving their goals and in satisfying their mandates by the need to devote scarce resources to providing, as best they can, the information and

11

advocacy that Medicare beneficiaries need in order to protect their rights through the process of recovery.

39. Plaintiffs have no adequate remedy at law. Only the declaratory, injunctive, and mandamus relief which this Court can provide will fully redress the wrongs done to plaintiffs.

40. Plaintiffs have a clear right to the relief sought. There is no other adequate remedy available to correct an otherwise unreviewable defect not related to a claim for benefits. The defendant has a plainly defined and nondiscretionary duty to provide the relief which plaintiffs seek.

### VII.   FIRST CAUSE OF ACTION: VIOLATION OF THE STATUTE, REGULATIONS, AND GUIDELINES

41. Defendant's refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates 42 U.S.C. § 1395gg(c), 42 C.F.R. § 405.357, and POMS, § HI 01001.330B.

### VIII.   SECOND CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE

42. Defendant's refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates the Due Process Clause of the Fifth Amendment to the Constitution.

### IX.   THIRD CAUSE OF ACTION: VIOLATION OF THE STATUTE, REGULATIONS, AND GUIDELINES

43. Defendant's failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment and who may be entitled to waiver of that recovery an

oral hearing prior to recovery violates the waiver rules of 42 U.S.C. § 1395gg(c), 42 C.F.R. § 405.358, and POMS, § HI 01001.330C., as virtually identical provisions have been interpreted by the courts, including the Supreme Court, to require.

### X.   FOURTH CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE

44.   Defendant's failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment, and who may be entitled to waiver of that recovery, an oral hearing prior to recovery violates the Due Process Clause of the Fifth Amendment to the Constitution.

### XI.   PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court:

1.   Assume jurisdiction over this action.

2.   Issue a temporary restraining order prohibiting defendant, his agents, employees and all persons acting in concert with him from sending out or posting on a website, or in any other way communicating, any information to or about Medicare beneficiaries who received an incorrect premium refund in early August 2006.

3.   Declare that defendant's refusal to send written notice to Medicare beneficiaries who received an incorrect premium refund in early August 2006 of their right to seek waiver of recovery, and of how to effect that right, violates the Medicare statute and regulations, the POMS, and the Due Process Clause of the Fifth Amendment.

4.   Declare that defendant's failure to offer Medicare beneficiaries who are subject to recovery of a payment incorrectly received a pre-recovery oral hearing on the issue of whether recovery should be waived violates the Medicare statute and regulations, the POMS, and the Due Process Clause of the Fifth Amendment.

5.   Grant and issue preliminary and permanent injunctions, and/or an order of mandamus, that

   a) prohibits defendant, his successors in office, his agents, employees, and all persons acting in concert with him, from further attempting to recover premium payments incorrectly refunded in early August 2006 unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right;

   b) requires defendant, his successors in office, his agents, employees, and all persons acting in concert with him, to immediately return any amounts that beneficiaries have repaid, or that they will repay (unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right); and

   c) prohibits defendant, his successors in office, his agents, employees, and all persons acting in concert with him from requiring beneficiaries either to repay the amounts incorrectly paid to them or to request waiver of recovery, until thirty (30) days after the date on which the Secretary sends out a written notice advising all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right.

6.   Grant and issue a permanent injunction, and/or an order of mandamus, that requires the Secretary to offer all Medicare beneficiaries who are subject to recovery of an incorrectly made payment the right to an oral hearing prior to recovery on the issue of whether the recovery should be waived.

Plaintiffs pray in addition:

7.  For costs of the suit herein.

8.  For reasonable attorneys' fees pursuant to 28 U.S.C. § 2412.

9.  For such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    /s/ Vicki Gottlich

VICKI GOTTLICH
D.C. Bar No. 937185
PATRICIA B. NEMORE
D.C. Bar No. 204446
Center for Medicare Advocacy, Inc.
1101 Vermont Avenue, N.W.,
Suite 1001
Washington, D.C. 20005
(202) 216-0028

GILL DEFORD
D.C. Bar No. 459280
JUDITH STEIN
BRAD PLEBANI
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790

SALLY HART
Center for Medicare Advocacy, Inc.
100 North Stone Ave., Suite 305
Tucson, AZ 85701
(520) 327-9547

Attorneys for Plaintiff

DATED: September 15, 2006

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



Mr. XXX XXXXX
XXXX Any Street
City, State  XXXXX

**Account Number: XXXXXXXX**

Dear Mr. XXXXX:

As you may recall from the recent letter we sent to you, Medicare experienced a processing error that resulted in you receiving a refund of your Prescription Drug Plan premiums.  Again, we apologize for this error and any inconvenience it may have created for you.  **Most importantly, we want to make certain that you understand that your prescription drug coverage will continue uninterrupted.**

There are two main purposes of this letter:

- First, to inform you about your future premium withholding status.

- Second, to inform you about the steps you can take to return the incorrect payment, so that it can be used to pay your premiums as you intended.

Medicare has worked hard to develop options for returning the incorrect payment that are intended to minimize any inconvenience for you.  You would have received this incorrect payment in one of two ways.  Either as a refund check or a direct deposit into your bank account.  If you received a refund check and have not already done so, please do not deposit the refund check.  I will explain below how you can return the check to us by mail.  If you received a payment directly deposited into your bank account, please set aside that amount of money for now.

**What you can expect concerning withholding of your future premiums:**

The Centers for Medicare & Medicaid Services is working to restart withholding from your Social Security benefits.  The Social Security Administration will resume premium withholding beginning in October.  In most cases, your premiums for September and October will be withheld from your October benefits.

**Here is how you can return the incorrect payment you received:**

Our records indicate that within the last month you received an incorrect payment of $xxx.xx.

You may choose from the following options:

1. You can return the check you received by writing **"VOID"** on the face of the check, and then mail it to the following address:

    Medicare - Drug Premiums
    P.O. Box 9058
    Pleasanton, CA 94566-9058

2. You can mail us a personal check or money order, made payable to **"Medicare"** in the amount indicated above. Please mail your check or money order to:

    Medicare - Drug Premiums
    P.O. Box 9058
    Pleasanton, CA 94566-9058

    Please include your name and the account number given above on the check or money order.

3. You can ask that we directly debit the amount from your personal bank account. Please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific) and we will be happy to make those arrangements for you.

    **Choosing this option will require that you provide personal banking information to our customer service representatives.**

4. If you have already returned this payment, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific) and let us know.

You should return this payment by September 30, 2006. If returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months. If you would like to discuss this option please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific). Our customer service representatives will work with you to develop a repayment plan that suits your needs.

**Please note that no one from Medicare will call you and ask for your bank account number or any other personal information. If someone contacts you seeking this information or other personal information, do not give it to them.**

Thank you for your prompt attention to this matter and again accept our apologies for the inconvenience caused. If you have any questions, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific).

                                                Sincerely,