Top of Form

1. **PolicyNet - POMS**

2. **PolicyNet/ Archived POMS&TSCOG Section**

This section is no longer current. It appears here for historical purposes only.
**Click here to go to the current version of this section**.

# OBSOLETE POLICY Effective Dates: 03/15/99 - 11/06/2001

# HI 01001.330 Incorrect Premium Refunds

## A. Incorrect Premium Refund Distinguished from Premium Arrearage

An individual may receive a refund which is not actually due him with an explanation that this amount represents premiums not owed (or greater than the amount owed). The refund may be made in a separate check or added to the individual's monthly benefit. Such an erroneous refund may occur, for example, because of incorrect information supplied by a third party, a computer processing error, or because of incorrect data entered into the SOBER system. The amount incorrectly paid him represents *an incorrect premium refund,* not a premium arrearage although it may have been recorded and treated as such in the Billing and Collection Master (BCM). The significance of this distinction is that a premium arrearage which is not paid by the end of the grace period requires termination of an individual's SMI or Premium-HI. An incorrect premium refund, on the other hand, has to be repaid unless the individual may be relieved of the responsibility for repayment of the erroneously refunded amount, but it cannot cost the enrollee his SMI or Premium-HI coverage. If termination of his Medicare coverage results from recording the erroneous premium refund as a premium arrearage, the termination is erroneous and must be reversed.

An enrollee meets his premium obligation when he pays his premiums. In the case of a beneficiary, premiums are paid when they are deducted from his benefits. If his benefits are in suspense or he is a nonbeneficiary, premiums are paid when a payment made by him (or by someone on his behalf) is mailed. If SSA mistakenly sends him a "refund" after he has paid his premiums and this mistake results in termination of his Medicare coverage, such a termination is erroneous and will be reversed when identified. Thus, if after receipt of a premium payment, the premium payment is inadvertently returned to the enrollee, whether or not the premiums have been paid into the SMI (or HI) Trust Fund, he owes HCFA the amount incorrectly returned but his Medicare coverage is not endangered by the administrative error. Of course, when an enrollee submits a "bad" check or

one that is unsigned, he has not, in fact, paid his premiums. However, such a mistake, if made in good faith, may be reason for granting a 3-month good cause extension of the grace period for payment of premiums. See **HI 01001.355**.

Where an incorrect premium refund (regardless of the amount involved) cannot be recovered, the SMI (or in the case of Premium-HI, the HI) Trust Fund rather than the OASI Trust Fund is charged. Any rules applicable to incorrect SMI premium refunds are applicable to Premium-HI refunds, except as otherwise expressly provided.

## **B.** When Relief from Repayment Will Be Considered

When an individual receives a premium refund which is not due him, he has not received a benefit overpayment nor has a true premium arrearage been created. However, he does owe HCFA the excess amount received. Accordingly, when a premium refund is identified as incorrect or erroneous, the program center will compare the erroneously refunded amount with the enrollee's SMI premium rate to determine if it exceeds the tolerance amount in D. below and thus requires recovery action. Where the amount does not exceed the tolerance, action will be taken to adjust SSA's records for the amount of the refund but no attempt will be made to recover from the individual. If the amount does exceed the tolerance, the individual will be notified of the amount he erroneously received, asked to return it, and told of his right to request relief from repayment of the incorrectly refunded amount.

## **C.** Development of Relief

If the individual expressly requests relief from repayment or states that he does not have the means to repay the incorrectly refunded amount, a determination on his request must be made. Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds which are reasonably necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purpose of title II. Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment (see **GN 02250.150** ff.) apply even though the incorrect premium refund is not a benefit overpayment.

If an individual has received an incorrect premium refund and requests relief from repayment of the erroneously refunded amount, the DO is responsible for the development and the determination. The DO should identify for special handling and forward to the PSC:

1. the appropriate documents used in the development (including SSA-632 F4).

2. a current DO-BCM Query Response: and

3. a determination made on an RC as to whether the individual may be excused from repaying the incorrectly refunded amount.

Favorable decisions should be forwarded to the special Post Office box number address shown in **HI 01005.802**.

Unfavorable decisions should be forwarded in a separate envelope to the appropriate PSC. These cases will be reviewed in the PSC and if there is concurrence with the initial DO decision, a denial notification which includes the reconsideration paragraph will be sent to the enrollee. If the decision is questionable, the file may be returned to the DO for further consideration; however, if the DO reaffirms its prior decision, the decision will not be questioned further.

In order to avoid confusion and uncertainty as to the amount of premiums owed, the DO and reviewing office should develop and process these cases as soon as possible.

## D. Tolerance Amount

In the interests of efficient administration, there is a tolerance amount, below which SSA will not attempt to recover an incorrect premium refund because of the costs of collection. Accordingly, if the incorrect refund does not exceed 3 months SMI premiums, no recovery action should be taken under B. and C. above.

*Example 1:*

John Dough is paying $45 per month for Premium-HI and $8.60 for SMI (including a 20% premium increase). He received an incorrect refund of $45. The tolerance is $25.80 (3 times his SMI premium). Since the amount of the erroneous refund is greater than the tolerance amount, SSA must notify Mr. Dough that he owes $45, and inform him of his right to request relief from repayment of the erroneously refunded amount.

*Example 2:*

Alice Johnson pays $7.40 for SMI (including a 10% premium increase). She received an incorrect refund of $14.80. The tolerance in this case is $22.20 (3 times her SMI premium). Since the amount of the refund is less than the tolerance amount, SSA will not take any action to recover it from the enrollee, but will adjust its records for the amount erroneously refunded and remove any additional premium liability generated by the incorrect premium refund.

**&&&Top** **&Previous** **&Next**

Please do not link to or bookmark this section. It is obsolete.
0601001330

Top of Form

1. **PolicyNet - POMS**
2. **PolicyNet/ Archived POMS&TSCOG Section**

This section is no longer current. It appears here for historical purposes only.

# OBSOLETE POLICY Effective Dates: 11/07/2001 - 12/04/2003

**TN 22 (11-01)**

# HI 01001.330 Incorrect Premium Refunds

## A. POLICY--INCORRECT PREMIUM REFUND DISTINGUISHED FROM PREMIUM ARREARAGE

An individual may receive a refund which is not actually due him/her with an explanation that this amount represents premiums not owed (or greater than the amount owed). The refund may be made in a separate check or added to the individual's monthly benefit. Such an erroneous refund may occur, for example, because of incorrect information supplied by a third party, a processing error, or because of incorrect data entered into the Direct Billing System. The amount incorrectly paid him/her represents an incorrect premium refund, not a premium arrearage, although it may have been received and treated as such on the direct billing record. The significance of this distinction is that a premium arrearage, which is not paid by the end of the grace period, requires termination of an individual's Supplementary Medical Insurance (SMI) or Premium-Hospital Insurance (HI). An incorrect premium refund, on the other hand, has to be repaid unless the individual may be relieved of the responsibility for repayment of the erroneously refunded amount, but it cannot cost the enrollee his/her SMI or Premium-HI coverage. If termination of his/her Medicare coverage results from recording the erroneous premium refund as a premium arrearage, the termination is erroneous and must be reversed.

An enrollee meets his/her premium obligation when he/she pays his/her premiums. In the case of a beneficiary, premiums are paid when they are deducted from his/her benefits. If his/her benefits are in suspense or he/she is an uninsured beneficiary, premiums are paid when a payment is made by him/her (or by someone on his/her behalf). If SSA mistakenly sends him/her a "refund" after he/she has paid his/her premiums and this mistake results in termination of his/her Medicare coverage, this termination is erroneous and will be reversed when identified. Thus, if after receipt of a premium payment, the premium payment is inadvertently returned to the enrollee, he/she owes Centers for Medicare & Medicaid Services (CMS) the amount incorrectly returned but

<u>his/her Medicare coverage is not endangered by the administrative error. When an enrollee submits a "bad check" or one that is unsigned, he/she has not, in fact, paid his/her premiums. However, such a mistake, if made in good faith, may be reason for granting a 3-month good cause extension of the grace period for payment of premiums. (See **HI 01001.355**</u>.)

Where an incorrect premium refund (regardless of the amount) cannot be recovered, the SMI or (in the case of Premium-HI), the HI Trust Fund rather than the Old-Age and Survivors Insurance Trust Fund is charged. Any rules applicable to incorrect SMI premium refunds are applicable to Premium-HI refunds, except as otherwise provided.

## B. POLICY--WHEN RELIEF FROM REPAYMENT WILL BE CONSIDERED

When an individual receives a premium refund which is not due, he/she has not received a benefit overpayment nor has a true premium arrearage been created. However, he/she does owe CMS the excess amount received. Accordingly, when a premium refund is identified as incorrect or erroneous, the program service center (PSC) will compare the erroneously refunded amount with the enrollee's SMI premium rate to determine if it exceeds the tolerance amount in **HI 01001.330** and thus requires recovery action. Where the amount does not exceed the tolerance, action will be taken to adjust SSA's record for the amount of the refund but no attempt will be made to recover from the individual. If the amount does exceed the tolerance, the individual will be notified of the amount he/she erroneously received, asked to return it, and told of his/her right to request relief from repayment of the incorrectly refunded amount.

## C. POLICY--DEVELOPMENT OF RELIEF

If the individual expressly requests relief from repayment or states that he/she does not have the means to repay the incorrectly refunded amount, a determination on his/her request must be made. Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds that are reasonably necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purpose of Title II (Social Security). Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment (see
**GN 02250.150** - **GN 02250.425**) apply even though the incorrect premium refund is not a benefit overpayment.

If an individual has received an incorrect premium refund and requests relief from repayment of the erroneously refunded amount, the field office (FO) is responsible for the development and the determination. The FO should identify for special handling and forward the following to the appropriate PSC:

1. The appropriate documents used in the development (including SSA-632-F4);

2. A determination made on a report of contact as to whether the individual may be excused from repaying the incorrectly refunded amount.

Favorable decisions should be forwarded to the Post Office Box number address shown in **HI 01005.802**.

Unfavorable decisions should be forwarded in a separate envelope to the appropriate PSC. These cases will be reviewed in the PSC and if there is concurrence with the initial FO decision, a denial notification which includes the reconsideration paragraph will be sent to the enrollee. If the decision is questionable, the file will be returned to the FO for further consideration. However, if the FO reaffirms its prior decision, the decision will not be questioned further.

In order to avoid confusion and uncertainty as to the amount of premiums owed, the FO and reviewing office should develop and process these cases as soon as possible.

## D. POLICY--TOLERANCE AMOUNT

In the interest of efficient administration, SSA will not attempt to recover an incorrect premium refund if the cost of recovery exceeds the collectible amount.

[**&&&Top**](#) [**&Previous**](#) [**&Next**](#)

Please do not link to or bookmark this section. It is obsolete.
0601001330

TN 22 (11-01)

# HI 01001.330 Incorrect Premium Refunds

## A. POLICY--INCORRECT PREMIUM REFUND DISTINGUISHED FROM PREMIUM ARREARAGE

An individual may receive a refund which is not actually due him/her with an explanation that this amount represents premiums not owed (or greater than the amount owed). The refund may be made in a separate check or added to the individual's monthly benefit. Such an erroneous refund may occur, for example, because of incorrect information supplied by a third party, a processing error, or because of incorrect data entered into the Direct Billing System. The amount incorrectly paid him/her represents an incorrect premium refund, not a premium arrearage, although it may have been received and treated as such on the direct billing record. The significance of this distinction is that a premium arrearage, which is not paid by the end of the grace period, requires termination of an individual's Supplementary Medical Insurance (SMI) or Premium-Hospital Insurance (HI). An incorrect premium refund, on the other hand, has to be repaid unless the individual may be relieved of the responsibility for repayment of the erroneously refunded amount, but it cannot cost the enrollee his/her SMI or Premium-HI coverage. If termination of his/her Medicare coverage results from recording the erroneous premium refund as a premium arrearage, the termination is erroneous and must be reversed.

An enrollee meets his/her premium obligation when he/she pays his/her premiums. In the case of a beneficiary, premiums are paid when they are deducted from his/her benefits. If his/her benefits are in suspense or he/she is an uninsured beneficiary, premiums are paid when a payment is made by him/her (or by someone on his/her behalf). If SSA mistakenly sends him/her a "refund" after he/she has paid his/her premiums and this mistake results in termination of his/her Medicare coverage, this termination is erroneous and will be reversed when identified. Thus, if after receipt of a premium payment, the premium payment is inadvertently returned to the enrollee, he/she owes Centers for Medicare & Medicaid Services (CMS) the amount incorrectly returned but his/her Medicare coverage is not endangered by the administrative error. When an enrollee submits a "bad check" or one that is unsigned, he/she has not, in fact, paid his/her premiums. However, such a mistake, if made in good faith, may be reason for granting a 3-month good cause extension of the grace period for payment of premiums. (See **HI 01001.355**.)

Where an incorrect premium refund (regardless of the amount) cannot be recovered, the SMI or (in the case of Premium-HI), the HI Trust Fund rather than the Old-Age and Survivors Insurance Trust Fund is charged. Any rules applicable to incorrect SMI premium refunds are applicable to Premium-HI refunds, except as otherwise provided.

## B. POLICY--WHEN RELIEF FROM REPAYMENT WILL BE CONSIDERED

When an individual receives a premium refund which is not due, he/she has not received a benefit overpayment nor has a true premium arrearage been created. However, he/she does owe CMS the excess amount received. Accordingly, when a premium refund is identified as incorrect or erroneous, the program service center (PSC) will compare the erroneously refunded amount with the enrollee's SMI premium rate to determine if it exceeds the tolerance amount in **HI 01001.330** and thus requires recovery action. Where the amount does not exceed the tolerance, action will be taken to adjust SSA's record for the amount of the refund but no attempt will be made to recover from the individual. If the amount does exceed the tolerance, the individual will be notified of the amount he/she erroneously received, asked to return it, and told of his/her right to request relief from repayment of the incorrectly refunded amount.

## C. POLICY--DEVELOPMENT OF RELIEF

If the individual expressly requests relief from repayment or states that he/she does not have the means to repay the incorrectly refunded amount, a determination on his/her request must be made. Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds that are reasonably necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purpose of Title II (Social Security). Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment (see **GN02250.150 - GN 02250.425**) apply even though the incorrect premium refund is not a benefit overpayment.

If an individual has received an incorrect premium refund and requests relief from repayment of the erroneously refunded amount, the field office (FO) is responsible for the development and the determination. The FO should identify for special handling and forward the following to the appropriate PSC:

1. The appropriate documents used in the development (including SSA-632-F4);

2. A determination made on a report of contact as to whether the individual may be excused from repaying the incorrectly refunded amount.

    Favorable decisions should be forwarded to the Post Office Box number address shown in **HI 01005.802**.

    Unfavorable decisions should be forwarded in a separate envelope to the appropriate PSC. These cases will be reviewed in the PSC and if there is concurrence with the initial FO decision, a denial notification which includes the reconsideration paragraph will be sent to the enrollee. If the decision is questionable, the file will be returned to the FO for further consideration. However, if the FO reaffirms its prior decision, the decision will not be questioned further.

    In order to avoid confusion and uncertainty as to the amount of premiums owed, the FO and reviewing office should develop and process these cases as soon as possible.

## **D. POLICY--TOLERANCE AMOUNT**

In the interest of efficient administration, SSA will not attempt to recover an incorrect premium refund if the cost of recovery exceeds the collectible amount. Accordingly, if the incorrect refund does not exceed 3 months of SMI premiums, no recovery action should be taken under B. and C. above.

EXAMPLE 1:

John Dough is paying $316 per month for Premium-HI and $58.70 for SMI. He received an incorrect refund of $316. The tolerance is $176.10 (3 times his SMI premium). Since the amount of the erroneous refund is greater than the tolerance amount, SSA must notify Mr. Dough that he owes $316, and inform him of his right to request relief from repayment of the erroneously refunded amount.

EXAMPLE 2:

Alice Johnson pays $64.60 for SMI (including a 10% premium increase). She received an incorrect refund of $129.20. The tolerance in this case is $193.80 (3 times her SMI premium). Since the amount of the refund is less than the tolerance amount, SSA will not take any action to recover the erroneous refund from the enrollee, but will adjust its records for the amount erroneously refunded and remove any additional premium liability generated by the incorrect premium refund.

HI 01001.330 - Incorrect Premium Refunds - 12/05/2003