UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS ) <br> ) <br> GREY PANTHERS, ) <br> ) <br>     Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> MICHAEL LEAVITT, Secretary of Health ) <br> and Human Services., ) <br> ) <br>     Defendant. ) <br> ) | Civil Action No.:   06-1607-HHK |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Defendant Michael O. Leavitt, Secretary of Health and Human Services, hereby submits this reply in order to respond to what he views as the major points in Plaintiffs' Opposition to Defendant's Motion to Dismiss and Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Opp."). Defendant limits his remarks in the instant brief to the truly essential, due to the shortness of time before the hearing on Plaintiffs' Motion for Preliminary Injunction, scheduled today in this matter. Defendant notes that he will be prepared to respond fully to any point made in Plaintiffs' Opp. at the hearing. For all of the reasons set forth below and in its Motion To Dismiss, Defendant respectfully submits that Plaintiffs' claims should be dismissed.

First, Plaintiffs do not meet the requirements for representational standing despite the efforts made in their latest brief. They still have made no showing that any of their members have suffered or are about to suffer an imminent concrete injury by reason of the Secretary's having sent out letters requiring repayment of the erroneous premium refunds at issue in this

case. The most they even attempt to show, through a statistical analysis of the total number of Part D enrollees as compared to the total number of enrollees affected by the erroneous premium refund, is that some relative small number of their members probably received one of the Secretary's letters requesting repayment of the refund repayment. Plaintiffs' Opp. at 5. But that is a far cry from a showing of actual imminent injury to any of the Plaintiff's members caused by the requested repayment. Indeed, Plaintiffs still do not allege that even one of their members has inquired with either of them about the refund repayment, let alone stated that they will be somehow harmed by having to repay the erroneous refund. The speculative nature of the injury that Plaintiffs suggest here, which the Court is apparently to infer from the mere fact that some of Plaintiffs' members might have received the Secretary's correspondence, is sufficient to support neither standing nor a request for emergency relief.

Many of the cases Plaintiffs put forward in support of their case actually support the Secretary's position. For example, in Consumer Federation of America v. FCC, 348 F.3d 1009 (D.C. Cir. 2003), Plaintiffs' Opp. at 5, the Court of Appeals found that a consumer group had representational standing to challenge an FCC rule based explicitly on the ground that it had identified a member of the group whose affidavit testimony demonstrated that he had suffered an injury in fact traceable to the challenged rule. Consumer Federation of America, 348 F.3d at 1011-1012. That case stands in stark contrast to this one. Here, there is no member identified, and there is no declaration or affidavit setting forth facts to support any concrete injury. Plaintiffs have failed to identify even a single member of their organizations who can allege any concrete injury in fact traceable to the Secretary's actions here.

Similarly, Plaintiffs cite Tozzi v. U.S. Department of HHS, 271 F.3d 301 (D.C. Cir.

2001), for the proposition that only one Plaintiff need have standing for an action to continue. Plaintiffs' Opp. at 3. While that may be true, Tozzi involved a suit by a material manufacturer, seeking to have the material he made removed from a list of possible carcinogens . Because the listing had a direct financial impact on the plaintiff's business, the Court found that he had suffered an injury sufficient to support his standing to assert his claim. Different from Tozzi, neither of the Plaintiffs in this action can assert such a claim, either on behalf of their members or, as discussed below, themselves.

    Second, Plaintiffs' efforts to buttress their claim of organizational standing fare no better. The declarations they submit essentially repeat the allegations in Plaintiffs' complaint regarding the additional resources that allegedly they will have to expend in order to educate their members about the erroneous premium refund giving rise to this case. As the Secretary previously set forth in his Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction, such allegations are insufficient to bestow standing on the organizations in their own right, and again, the very cases Plaintiffs cite simply underscore their shortcomings. For instance, in NTEU v. United States, 101 F.3d 1423 (D.C. Cir.), Plaintiffs' Opp. at 9, the Court of Appeals made clear that the hardship of an organization's having to decide how to re-allocate its resources is insufficient to confer standing: "[T]he only alleged hardship to the parties of withholding immediate judicial review is that the appellants, allegedly, will divide their resources differently between their lobbying efforts toward the Congress . . . and the President . . . . Whatever is on the other side of the scale need not be  very heavy to outweigh this light hardship." NTEU, 101 F.3d at 1431. The test of organizational standing focuses on whether the challenged action impedes the mandate of the organization. A reallocation of organizational resources fails this

3

test.

By contrast, the organizational plaintiffs in the seminal Havens case, 455 U.S. 363 (1982), and in Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler, 789 F.2d 931 (D.C. Cir. 1986), suffered real injuries that frustrated their very ability to carry out their missions. In the former case, the defendant had engaged in unfair housing practices diametrically opposed to the organization's mission of ensuring fair housing. Havens Realty Corp. v. Coleman, 455 U.S. at 379. In the latter case, the government allegedly had stopped sending reports regarding potential age discrimination that were used by the organization to further its mission of assisting senior citizens. Action Alliance, 789 F.2d at 937-38. These harms, accruing directly to the detriment of the missions of the plaintiff organizations are a far cry from the harm that Plaintiffs allege here – that they will have to divert resources from other programs or actions in which they might otherwise engage. Id.; see also NTEU, 101 F.3d at 1429.

Finally, Plaintiffs attempt to defeat the Secretary's arguments on the merits of this dispute, contending that the Secretary misreads the Medicare program's waiver of recovery of overpayment provision, 42 U.S.C. § 1395gg. Plaintiffs contend the Secretary focuses on the wrong sentence in section 1395gg(c), the first sentence of which they contend sets out the general rule for Medicare waiver. Plaintiffs' Opp. at 10-11. But it is Plaintiffs who misconstrue that provision by ignoring the very first part of the first sentence of section 1395gg(c), which states that "[t]here shall be no adjustment as provided in subsection (b) (nor shall there be recovery) in any case where" the incorrect payment has been made with respect to an individual who is without fault and where recovery would defeat the purpose of the statute or be against equity and good conscience. (Emphasis added). The cross-reference to subsection 1395gg(b) is critical,

4

because that subsection states that where "more than the correct amount is paid under this title to a provider of services or other person <u>for items or services</u> furnished an individual," recovery can proceed by adjusting the individual's subsequent benefits. (Emphasis added). Therefore, both potential recovery of overpayments and waiver of any such recovery are plainly limited to payments made "for items and services furnished an individual." Contrary to Plaintiffs' contentions, this reference to payment for <u>items and services</u> appears in every paragraph of section 1395gg. Plaintiffs' efforts to read that phrase out of the statute is misplaced.

As the Secretary previously set forth, the premium refunds at issue here are not payments made for items and services furnished under Medicare. Thus, section 1395gg has no applicability to this case. This conclusion is clear from the face of the provision itself, and it is disingenuous for Plaintiffs to suggest otherwise. There is no statutory authority applicable to Part D of the Medicare program that obligates the Secretary to offer waiver to those enrollees who received the erroneous premium refund, and Plaintiffs have utterly failed to identify any such authority.

## <u>CONCLUSION</u>

For the reasons stated above and in Defendant's Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction, the Secretary respectfully requests that this Court dismiss Plaintiffs' complaint and deny Plaintiffs' Motion For Preliminary Injunction.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-514-7220

/s/
MARCUS H. CHRIST
LAWRENCE J. HARDER
U.S. Department of Health and Human Services
　Office of the General Counsel
Centers for Medicare & Medicaid Services
　Division
7500 Security Blvd., C2-05-23
Baltimore, MD 21244
410-786-9304

OF COUNSEL:

DANIEL MERON
General Counsel

KATHLEEN H. McGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
　for Litigation

United States Department of
　Health and Human Services