UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS | ) |
| 2740 N. Front Street | ) |
| Philadelphia, PA 19133 | ) |
| | ) |
| GRAY PANTHERS | ) |
| 1612 K Street, NW, Suite 300 | ) |
| Washington, D.C. 20006 | ) |
| | ) |
| LUCY CAROLYN LOVEALL | ) |
| 728 N. Main Street | ) |
| Franklin, Kentucky 42131 | ) |
| Plaintiffs, | ) C.A. No. 1:06 01607 HHK |
| | ) |
| v. | ) |
| | ) FIRST AMENDED |
| MICHAEL LEAVITT, Secretary of Department | ) COMPLAINT FOR |
| Of Health and Human Services | ) DECLARATORY, |
| 200 Independence Avenue, SW | ) INJUNCTIVE AND |
| Washington, D.C. 20201 | ) MANDAMUS RELIEF |
| Defendant. | ) |

_____ )

## I. **INTRODUCTION**

1.      This is an action against the Secretary of the Department of Health and
Human Services ("Secretary") as the official responsible for the Department's refusal to
inform hundreds of thousands of Medicare beneficiaries of their right to seek waiver of
recovery of premium refunds that were paid to these beneficiaries.

2.      Plaintiffs also seek to require the Secretary to offer oral hearings to
beneficiaries who seek waiver prior to recovering any portion of the premiums that were
paid to them.

3.      A Medicare processing error resulted in approximately 230,000 Medicare
beneficiaries receiving refunds in their August 2006 Social Security checks for the

premiums paid for their participation in a Medicare Part D drug plan.  By form letter sent

out to each of these beneficiaries in late August or early September 2006, the

beneficiaries were informed of the amount that had been incorrectly paid to them and of

their obligation to return that amount.  Beneficiaries were given several options for

returning the payment or requesting repayment by installment, with a deadline of

September 30, 2006.  They were not informed of their right to request that recovery of the

payment be waived and of how to make that request.

4.    Plaintiffs include organizations whose members include many Medicare

beneficiaries who received these payments and who may qualify to have recovery of

these payments waived, and which provide assistance to Medicare beneficiaries, and a

Medicare beneficiary who received a refund of Part D premiums and a letter requesting

repayment..  They challenge the Secretary's actions as violative of the Medicare statute,

regulations, and guidelines, and of the Due Process Clause of the Fifth Amendment.

They seek declaratory, injunctive, and mandamus relief requiring the Secretary to inform

the affected beneficiaries of their right to seek waiver of recovery, which includes the

right to a pre-recoupment oral hearing on the waiver request.

5.    Plaintiffs request a temporary restraining order prohibiting the Secretary

from sending out, or posting on a website, additional communications to, or about,

beneficiaries who received the payments.  They request a preliminary injunction

requiring the Secretary to cease attempting to recover the premium payments that were

incorrectly refunded, and to repay to beneficiaries those amounts that have been

recovered, until he sends a new letter to beneficiaries explaining their right to seek waiver

of recovery and extending the deadline to take action, including requesting waiver, until thirty days after that new letter is sent out.

## II.    JURISDICTION

6.      Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g), which is incorporated into the Medicare statute by 42 U.S.C. §§ 1395ff(b)(1)(A), 1395w-22(g)(5), and 1395w-104(h)(1), and also pursuant to 28 U.S.C. §§ 1331 and 1361.

## III.    PARTIES

7.      Plaintiff  ACTION ALLIANCE OF SENIOR CITIZENS (hereinafter, Action Alliance), with its principal office in Philadelphia, Pennsylvania and a membership throughout the Commonwealth of Pennsylvania, which includes many Medicare beneficiaries enrolled in Part D prescription drug plans, has as its mandate to accord to senior citizens lives of dignity and freedom from want and fear by providing education and advocacy on issues affecting the elderly.

8.      Plaintiff THE GRAY PANTHERS, with its principal office in Washington, D.C., is a national organization with 25 chapters located throughout the country.  It has a membership of about 20,000 people, the large majority of whom are Medicare beneficiaries enrolled in Part D prescription drug plans.

9.      Plaintiff LUCY CAROLYN LOVEALL of Franklin Kentucky is a 65-year old Medicare beneficiary who is enrolled in a Medicare Part D drug plan, who had premiums for her drug plan withdrawn from her Social Security Retirement check, who received a refund of $161.70, and who received a letter from Defendant demanding repayment of the refund.

10.    Defendant MICHAEL O. LEAVITT is the Secretary of the Department of Health and Human Services (HHS).  In that capacity he has responsibility for the conduct and policies of HHS, including responsibility for the Centers for Medicare & Medicaid Services (CMS), which administers the Medicare program.  He is sued in his official capacity.

### IV.    LEGAL FRAMEWORK

#### A.    Medicare and the Part D prescription drug option

11.    Enacted in 1965 as Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, Medicare is funded by the federal government through beneficiary premiums, payroll taxes, and general revenues, and provides health care coverage to 43 million eligible individuals who are either age 65 or over or have long-term disabilities or specified medical conditions.  Through Parts A and B, Medicare provides coverage for in-patient hospital stays, doctor and clinic visits, and certain other reasonable and necessary services and items.  Through Part C, the Medicare Advantage program, beneficiaries may opt to enroll in a managed care plan in lieu of the traditional fee-for-service approach.

12.    Pursuant to a new Part D set out at 42 U.S.C. §§ 1395w *et seq*. and starting January 1, 2006, Medicare now offers access to prescription drug coverage.  The coverage is provided entirely through private prescription drug plans (PDPs) and Medicare Advantage plans (MA-PDs).

13.    Premiums to pay for beneficiaries' participation in the PDPs and MA-PDs may be but are not required to be deducted from their Social Security checks.

#### B.    Waiver of recovery

14.    Federal benefit programs have statutory provisions that prohibit recovery of payments incorrectly made to beneficiaries when the beneficiary was not at fault and recovery either would be "against equity and good conscience" or would defeat the purposes of the statute.  For instance, when Social Security benefits authorized pursuant to Title II of the Social Security Act are overpaid, recovery is prohibited by the waiver provision of that Title (42 U.S.C. § 404(b)) when beneficiaries satisfy the criteria set out in the previous sentence.

15.    The courts interpreting that provision, and others similar to it, have held that these mandatory waiver provisions require that the beneficiary be notified in writing of his right to waiver of the overpayment and have an opportunity for a pre-recoupment oral hearing before any recovery can be effected.  See, *e.g., Elliott v. Weinberger*, 564 F.2d 1219, 1235-1236 (9th Cir. 1977) (requiring notice), aff'd in part, rev'd in part on other grounds *sub nom*. *Califano v. Yamasaki*, 442 U.S. 682, 693-697 (1979) (requiring opportunity for pre-recoupment oral hearing).

16.    The Medicare statute has such a waiver provision prohibiting recovery in these circumstances:

> There shall be no adjustment as provided in subsection (b) of this section (nor shall there be recovery) in any case where the incorrect payment has been made … with respect to an individual who is without fault … if such adjustment (or recovery) would defeat the purposes of subchapter II or subchapter XVIII of this chapter or would be against equity and good conscience.

42 U.S.C. § 1395gg(c).  Medicare regulations repeat this prohibition against recovery in the delineated circumstances.  42 C.F.R. § 405.358.

17.    Medicare regulations also require written notice of the right to waiver:

> Whenever an initial determination is made that more than the correct amount of payment has been made, notice of the provisions of [42 U.S.C. § 1395gg(c)] regarding waiver of adjustment or recovery shall be sent to the overpaid individual ….

42 C.F.R. § 405.357.

18.    Recognizing these Medicare and Title II requirements, the Social Security Administration has issued directives in its Program Operations Manual System (POMS) when premiums deducted from Social Security payments are incorrectly refunded. The POMS states that

> the individual will be notified of the amount he/she erroneously received, asked to return it, and told of his/her right to request relief from repayment of the incorrectly refunded amount.
>
> ….
>
> Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds that are reasonable and necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purposes of Title II (Social Security). Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment … apply even though the incorrect premium is not a benefit overpayment.

POMS, § HI 01001.330B., C. (posted at

https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0601001330!opendocument).

19.    The Medicare regulations do not offer the opportunity for a pre-recoupment oral hearing.

## V.    FACTUAL STATEMENT

### A.    Defendant's actions precipitating this lawsuit

20.    For reasons that have not been explicitly stated, but that CMS refers to as "a processing error," about 230,000 beneficiaries who paid the premiums for their PDP or MA-PD plans via a deduction in their monthly Social Security checks received a refund

6

in early August 2006 for those premiums in their Social Security checks or through direct deposit.

21.     By letter sent to each of these beneficiaries in late August or early September 2006, CMS informed each of them of the amount of the "incorrect payment" and provided several options for returning the full amount.  (A copy of the generic version of the letter is attached to this Complaint as Exhibit A.)  The letter further stated that "[y]ou should return this payment by September 30, 2006.  If returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months."  A toll-free telephone number was provided for those beneficiaries who "would like to discuss this option" of making installment payments.

22.     The letter does not mention the possibility of waiver of recovery, either by explicit use of that term, by a description of that term, or by any reference that could be construed to refer to waiver.  Nor does the letter in any way suggest how a beneficiary could request waiver of recovery.

23.     In addition to sending out the letter to the beneficiaries, CMS also sent out or posted on its website a "Tip Sheet" entitled "Information Partners Can Use to Help Beneficiaries with: PREMIUM WITHHOLD REFUND ISSUE".  The Tip Sheet informed CMS' Part D drug plan partners of the incorrect payment, of CMS' intention to collect it, of the letter that CMS was sending out to the beneficiaries, and of the ways that the partners could assist beneficiaries in repaying the refund.  Like the letter to beneficiaries, the Tip Sheet did not mention the possibility of waiver, explicitly or implicitly.  The Tip Sheet is posted at

http://www.cms.hhs.gov/partnerships/downloads/PremiumWithholdRefundIssue.pdf.

24.    Furthermore, CMS made available, either by sending or by posting on its website, a description of what had transpired that could be used by organizations for newsletters or other publications.  This document provided essentially the same information as in the letter to beneficiaries and in the Tip Sheet.  It did not make any mention of the possibility of waiver, explicitly or implicitly.

25.    Via an e-mail letter sent on August 30, 2006 to the CMS Administrator (Dr. Mark McClellan), Judith Stein, the director of the Center for Medicare Advocacy, Inc., whose employee-attorneys represent the plaintiffs in this case, informed him that the letter that CMS was sending out to the affected beneficiaries did not alert them to their right to waiver and requested that it be revised to include that information.  Ms. Stein was subsequently contacted by an individual working for Dr. McClellan, who told her that the letter would be sent out without information about the right to waiver.

26.    As CMS has admitted, the premium refund was its error.  Accordingly, by definition, all of the approximately 230,000 beneficiaries who received the "incorrect payment" were without fault.

27.    On information and belief, for many, probably most, of the approximately 230,000 Medicare beneficiaries who received the "incorrect payment," it would be against equity and good conscience, or would defeat the purposes of Title II or Title XVIII, to recover that payment.

### B.    Plaintiffs

28.    Plaintiff Action Alliance organizes grassroots senior groups throughout the Commonwealth of Pennsylvania and includes over 110,000 people in its membership and affiliated clubs.  A large percentage of these are Medicare beneficiaries, and most of

them are enrolled in a Part D-authorized plan.  Action Alliance has an annual budget of $80,000.

29.    Action Alliance is active in promoting information about Medicare among its members and among the wider population of older people throughout Pennsylvania and primarily in the Southeastern Pennsylvania region.  It is also active in addressing both individual and systemic issues that Medicare beneficiaries encounter.

30.    Action Alliance communicates with its members and with other older people through a newsletter, through frequent presentations at senior housing sites, senior centers and senior citizen clubs, through town meetings, through a monthly membership council meeting for club delegates and general members, and through individual, one-on-one assistance to those who contact the organization.  The newsletter is sent to more than 4,100 individuals and organizations.  Senior center presentations, approximately monthly, often include segments on the rights of beneficiaries in such plans.  In collaboration with Community Legal Services and the Pennsylvania Health Law Project, Action Alliance advises and advocates for individuals with Medicare-related problems.

31.    Action Alliance has already heard that individuals in Pennsylvania have received the letter from CMS concerning incorrect payments and is assessing how best to help its members and other Pennsylvania Medicare beneficiaries to understand that they have options not presented to them in the letter.  Action Alliance is now evaluating how best to get the necessary information out to its members and others affected in Pennsylvania and to advise and educate them immediately as to the scope and meaning of their rights.  Action Alliance expects to take action to this end within the next few days.

32.    As a result of the defendant's failure to inform beneficiaries of their rights, members of Action Alliance will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.

33.    Furthermore, Action Alliance will have insufficient time in which to analyze information to help its members make informed choices and therefore will not be able to carry out its mandate to its membership.  It also will have to devote scarce time, effort, staff, and other resources to quickly analyze the relevant information and provide as effective assistance to its members and others as it can in a short period of time.  The resources devoted to these efforts could be used for other projects to implement Action Alliance's mandate if defendant had carried out his obligations.  By failing to carry out these obligations, defendant has expanded the size of the universe of people needing Action Alliance's assistance and the scope of the assistance needed, has interfered with and impeded Action Alliance's mandate, and has reduced the overall effectiveness of its programs and efforts.

34.    Plaintiff Gray Panthers is a national organization with 25 chapters located throughout the country.  Its mission is to organize people of all ages to fight for social and economic justice, with a specific focus on organizing around health care issues which affect its entire membership.  A large majority of its 20,000 members are Medicare beneficiaries, and many of these are enrolled in Part D-authorized plans.

35.    Gray Panthers is active in promoting information about Medicare among its members and among the wider population of older people throughout the country and in trying to redress difficulties Medicare beneficiaries have with Part D. In particular, a

California chapter has a grant to provide outreach and education about Medicare Part D throughout the state of California.

36.    Gray Panthers has been contacted about Part D problems often by members and the general public who do not understand the information and advice they have been provided. Gray Panthers is trying to dispense information and advice to its members and others about what they should do.

37.    As a result of defendant's actions, members of the Gray Panthers will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.

38.    Furthermore, the Gray Panthers will have insufficient time in which to analyze information to help its members and the coalitions with which it works make informed choices and therefore will not be able to carry out its mandate to its membership.  It also will have to devote scarce time, effort, staff, and other resources to quickly analyze the relevant information and provide as effective assistance to its members and others as it can in a much shorter period of time.  The resources devoted to these efforts could be used for other projects to implement the Gray Panthers' mandate if defendant had carried out his statutory obligations.  By failing to carry out these obligations, defendant has expanded the size of the universe of people needing the Gray Panthers' assistance and the scope of the assistance needed, has interfered with and impeded the Gray Panthers' mandate, and has reduced the overall effectiveness of its programs and efforts.

39.  Plaintiff Lucy Carolyn Loveall is a 65-year old married resident of Franklin, Kentucky.  She receives Social Security benefits and is enrolled in a Medicare Part D plan.  She elected to have the premiums for her Part D plan withdrawn from her Social Security check.  Her monthly premium is $23.15.

40.  Mrs. Loveall receives $859 per month in Social Security retirement benefits. She also receives a check from her deceased first husband's account of $445.22.  Her husband's retirement benefits are $909.90 per month.  They have no other income.  Their total monthly income is $2,214.12.

41.  Mrs. Loveall received a direct deposit from Social Security into her checking account for $161.70 in August 2006.  She received a letter from the Social Security Administration, dated August 10, 2006, telling her that the money was for a reimbursement due to her.  (Letter Attached as Exhibit B.)  The social worker at her senior center contacted Medicare and Social Security on her behalf and was told that because of the insurance companies, the premiums would no longer be deducted from the Social Security check.  Mrs. Loveall was not told that she would have to repay the money, so she spent the money.

42.  Mrs. Loveall received a letter from defendant dated August 29, 2006, telling her that she would have to repay the $161.70 by September 30, 2006.  The letter offered four options for repayment, but did not inform Mrs. Loveall that she could request a waiver of the premium refund.  (Letter Attached as Exhibit C.)

43.  Mrs. Loveall and her husband have monthly expenses of $3067, which exceed their monthly income by roughly $800. Mrs. Loveall has a large monthly loan

12

payment. She took out the loan to pay to have her teeth removed and to have dentures made; she has no dental insurance.

44. Mrs. Loveall has several chronic conditions including high cholesterol and heart problems. She is a cancer survivor. Both she and her husband have numerous drugs prescribed for them for which they no longer have the prescriptions filled and no longer take because they cannot afford the cost. Their doctors often prescribe medications that are not covered under their Medicare Part D Plan.

45. As a result of their household and medical expenses, Mrs. Loveall cannot afford to repay the $161.70.

## VI. INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS

46. Plaintiffs will suffer irreparable injury by reason of defendant's actions complained of herein. Because of the defendant's failure to inform Mrs. Loveall and members of the plaintiff organizations that they may request waiver of repayment of the refund, they have no way of knowing that they may not be required to repay, and they will be deprived of income needed to pay for food or other necessities. The plaintiff organizations themselves will be thwarted and impeded in achieving their goals and in satisfying their mandates by the need to devote scarce resources to providing, as best they can, the information and advocacy that Medicare beneficiaries need in order to protect their rights through the process of recovery.

47. Plaintiffs have no adequate remedy at law. Only the declaratory, injunctive, and mandamus relief which this Court can provide will fully redress the wrongs done to plaintiffs.

48.    Plaintiffs have a clear right to the relief sought.  There is no other adequate remedy available to correct an otherwise unreviewable defect not related to a claim for benefits.  The defendant has a plainly defined and nondiscretionary duty to provide the relief which plaintiffs seek.

## VII.    FIRST CAUSE OF ACTION:
## VIOLATION OF THE STATUTE, REGULATIONS, AND GUIDELINES

49.    Defendant's refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates 42 U.S.C. § 1395gg(c), 42 C.F.R. § 405.357, and POMS, § HI 01001.330B.

## VIII.    SECOND CAUSE OF ACTION:
## VIOLATION OF THE DUE PROCESS CLAUSE

50.    Defendant's refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates the Due Process Clause of the Fifth Amendment to the Constitution.

## IX.    THIRD CAUSE OF ACTION:
## VIOLATION OF THE STATUTE, REGULATIONS, AND GUIDELINES

51.    Defendant's failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment and who may be entitled to waiver of that recovery an oral hearing prior to recovery violates the waiver rules of 42 U.S.C. § 1395gg(c), 42 C.F.R. § 405.358, and POMS, § HI 01001.330C., as virtually identical provisions have been interpreted by the courts, including the Supreme Court, to require.

## X.    FOURTH CAUSE OF ACTION:
## VIOLATION OF THE DUE PROCESS CLAUSE

52. Defendant's failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment, and who may be entitled to waiver of that recovery, an oral hearing prior to recovery violates the Due Process Clause of the Fifth Amendment to the Constitution.

## XI.    PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court:

1. Assume jurisdiction over this action.

2. Issue a temporary restraining order prohibiting defendant, his agents, employees and all persons acting in concert with him from sending out or posting on a website, or in any other way communicating, any information to or about Medicare beneficiaries who received an incorrect premium refund in early August 2006.

3. Declare that defendant's refusal to send written notice to Medicare beneficiaries who received an incorrect premium refund in early August 2006 of their right to seek waiver of recovery, and of how to effect that right, violates the Medicare statute and regulations, the POMS, and the Due Process Clause of the Fifth Amendment.

4. Declare that defendant's failure to offer Medicare beneficiaries who are subject to recovery of a payment incorrectly received a pre-recovery oral hearing on the issue of whether recovery should be waived violates the Medicare statute and regulations, the POMS, and the Due Process Clause of the Fifth Amendment.

5. Grant and issue preliminary and permanent injunctions, and/or an order of mandamus, that

a) prohibits defendant, his successors in office, his agents, employees, and all persons acting in concert with him, from further attempting to recover premium

payments incorrectly refunded in early August 2006 unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right;

b) requires defendant, his successors in office, his agents, employees, and all persons acting in concert with him, to immediately return any amounts that beneficiaries have repaid, or that they will repay (unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right); and

c) prohibits defendant, his successors in office, his agents, employees, and all persons acting in concert with him from requiring beneficiaries either to repay the amounts incorrectly paid to them or to request waiver of recovery, until thirty (30) days after the date on which the Secretary sends out a written notice advising all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right.

6.     Grant and issue a permanent injunction, and/or an order of mandamus, that requires the Secretary to offer all Medicare beneficiaries who are subject to recovery of an incorrectly made payment the right to an oral hearing prior to recovery on the issue of whether the recovery should be waived.

Plaintiffs pray in addition:

7.     For costs of the suit herein.

8.     For reasonable attorneys' fees pursuant to 28 U.S.C. § 2412.

9.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

_Vicki Gottlich_

VICKI GOTTLICH
D.C. Bar No. 937185
PATRICIA B. NEMORE
D.C. Bar No. 204446
Center for Medicare Advocacy, Inc.
1101 Vermont Avenue, N.W.,
Suite 1001
Washington, D.C. 20005
(202) 216-0028

GILL DEFORD
D.C. Bar No. 459280
JUDITH STEIN
BRAD PLEBANI
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790

SALLY HART
Center for Medicare Advocacy, Inc.
100 North Stone Ave., Suite 305
Tucson, AZ 85701
(520) 327-9547

Attorneys for Plaintiff

DATED:  September  27, 2006

## CERTIFICATE OF SERVICE

I, Jacqueline A. Bender, under the direction of counsel for the plaintiffs, Vicki Gottlich, certify that, on September 27, 2006, the Plaintiffs' First Amended Complaint was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Jacqueline A. Bender

# EXHIBIT A

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244-1850



---

Mr. XXX XXXXX
XXXX Any Street
City, State  XXXXX

**Account Number:  XXXXXXXX**

Dear Mr. XXXXX:

As you may recall from the recent letter we sent to you, Medicare experienced a processing error that resulted in you receiving a refund of your Prescription Drug Plan premiums.  Again, we apologize for this error and any inconvenience it may have created for you.  **Most importantly, we want to make certain that you understand that your prescription drug coverage will continue uninterrupted.**

There are two main purposes of this letter:

- First, to inform you about your future premium withholding status.

- Second, to inform you about the steps you can take to return the incorrect payment, so that it can be used to pay your premiums as you intended.

Medicare has worked hard to develop options for returning the incorrect payment that are intended to minimize any inconvenience for you.  You would have received this incorrect payment in one of two ways.  Either as a refund check or a direct deposit into your bank account.  If you received a refund check and have not already done so, please do not deposit the refund check.  I will explain below how you can return the check to us by mail.  If you received a payment directly deposited into your bank account, please set aside that amount of money for now.

## What you can expect concerning withholding of your future premiums:

The Centers for Medicare & Medicaid Services is working to restart withholding from your Social Security benefits.  The Social Security Administration will resume premium withholding beginning in October.  In most cases, your premiums for September and October will be withheld from your October benefits.

## Here is how you can return the incorrect payment you received:

Our records indicate that within the last month you received an incorrect payment of **$xxx.xx**.

You may choose from the following options:

1. You can return the check you received by writing **"VOID"** on the face of the check, and then mail it to the following address:

> Medicare - Drug Premiums
> P.O. Box 9058
> Pleasanton, CA 94566-9058

2. You can mail us a personal check or money order, made payable to **"Medicare"** in the amount indicated above. Please mail your check or money order to:

> Medicare - Drug Premiums
> P.O. Box 9058
> Pleasanton, CA 94566-9058

> Please include your name and the account number given above on the check or money order.

3. You can ask that we directly debit the amount from your personal bank account. Please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific) and we will be happy to make those arrangements for you.

> **Choosing this option will require that you provide personal banking information to our customer service representatives.**

4. If you have already returned this payment, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific) and let us know.

You should return this payment by September 30, 2006. If returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months. If you would like to discuss this option please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific). Our customer service representatives will work with you to develop a repayment plan that suits your needs.

**<u>Please note that no one from Medicare will call you and ask for your bank account number or any other personal information. If someone contacts you seeking this information or other personal information, do not give it to them.</u>**

Thank you for your prompt attention to this matter and again accept our apologies for the inconvenience caused. If you have any questions, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 6:00 PM (Pacific).

Sincerely,

# EXHIBIT B

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Important Information

Southeastern Program Service Center
2001 Twelfth Avenue, North
Birmingham, Alabama 35285-0001
Date:  August 10, 2006
Claim Number:  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D2

0803 T2R M04,PC3,N,BI,T221,          000062094 01 AB    0.317
LUCY C LOVEALL
P O BX 698
FRANKLIN KY 42135-0698



We will no longer deduct money for your health plan premium(s) from your monthly benefits.

**What We Will Pay And When**

- You will receive $161.70 around August 18, 2006.

- This is the money you are due through July 2006.

- You will receive $859.00 for August 2006 around September 1, 2006.

- After that you will receive $859.00 on or about the third of each month.

**Information About Your Health Plan Premiums**

If you have any questions about your health plan premiums, please contact your health plan(s).

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security.  If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-270-842-5691.  We can answer most questions over the phone.  If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778.  You can also write or visit any Social Security office.  The office that serves your area is located at:

SOCIAL SECURITY
1310 CAMPBELL LANE
BOWLING GREEN, KY 42104

C

See Next Page

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D2                                             Page 2 of 2

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

*Quittie C. Wilson*

Quittie C. Wilson
Assistant Regional Commissioner,
Processing Center Operations

# EXHIBIT C



August 29, 2006

File#7-20876565
LUCY C LOVEALL
PO BOX 698
FRANKLIN KY 42135-0698

Account Number:  90405073736

Dear Medicare Beneficiary:

As you may recall from the recent letter we sent to you, Medicare experienced a processing error that resulted in you receiving a refund of your Prescription Drug Plan premiums.  Again, we apologize for this error and any inconvenience it may have created for you.  **Most importantly, we want to make certain that you understand that your prescription drug coverage will continue uninterrupted.**

There are two main purposes of this letter:

*   First, to inform you about your future premium withholding status.
*   Second, to inform you about the steps you can take to return the incorrect payment, so that it can be used to pay your premiums as you intended.

Medicare has worked hard to develop options for returning the incorrect payment that are intended to minimize any inconvenience for you.  You would have received this incorrect payment in one of two ways.  Either as a refund check or a direct deposit into your bank account.  If you received a refund check and have not already done so, please do not deposit the refund check.  I will explain below how you can return the check to us by mail.  If you received a payment directly deposited into your bank account, please set aside that amount of money for now.

**What you can expect concerning withholding of your future premiums:**

The Centers for Medicare & Medicaid Services is working to restart withholding from your Social Security payment beginning in October.  Since no premium was withheld from your September payment, this withholding will cover your September and October premiums.

**Here is how you can return the incorrect payment you received:**

Our records indicate that within the last month you received an incorrect payment of **$161.70**.

CMS/LR301

---

You may choose from the following options:

1.  You can return the check you received by writing **"VOID"** on the face of the check, and then mail it to the following address:

> Medicare - Drug Premiums
> P.O. Box 9058
> Pleasanton, CA 94566-9058

2.  You can mail us a personal check or money order, made payable to **"Medicare"** in the amount indicated above. Please mail your check or money order to:

> Medicare - Drug Premiums
> P.O. Box 9058
> Pleasanton, CA 94566-9058

> Please include your name and the account number given above on the check or money order.

3.  You can ask that we directly debit the amount from your personal bank account. Please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 9:00 PM (Eastern) and we will be happy to make those arrangements for you.

    **Choosing this option will require that you provide personal banking information to our customer service representatives.**

4.  If you have already returned this payment, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 9:00 PM (Eastern) and let us know.

You should return this payment by September 30, 2006. If returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months. If you would like to discuss this option please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 9:00 PM (Eastern). Our customer service representatives will work with you to develop a repayment plan that suits your needs.

**Please note that no one from Medicare will call you and ask for your bank account number or any other personal information. If someone contacts you seeking this information or other personal information, do not give it to them.**

Thank you for your prompt attention to this matter and again accept our apologies for the inconvenience caused. If you have any questions, please **telephone us toll free at 1-866-292-8080** any time from 7:00 AM (Eastern) to 9:00 PM (Eastern).

Sincerely,

*John R. Dyer*

John R. Dyer
Chief Operating Officer