IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS, et al,, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 06-1607-HHK |
| MICHAEL LEAVITT, | ) ) ) |
| Defendant. | ) ) ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE STAY**

**INTRODUCTION**

On November 7, 2006, this Court granted a stay of proceedings in the above-captioned action "until thirty days after the final decision" of the Court of Appeals for this Circuit on defendant's appeal of a preliminary injunction. Order to Stay Proceedings at 1 (Doc. 26). Although the appeal is still pending as a result of plaintiffs' own petition for rehearing, they have now moved to vacate the stay, amend their complaint for a second time, and proceed with simultaneous proceedings in both courts. The reasons for granting a stay pending the outcome in the Court of Appeals, however, are as compelling today as they were when they were first considered by this Court seven months ago. Plaintiffs will have ample opportunity to address the need, if any, for further proceedings thirty days after a mandate from the Court of Appeals has issued. The request to lift the stay should be denied, and the motion to amend the complaint denied as premature.

**BACKGROUND**

Title XVIII of the Social Security Act, commonly known as the Medicare Act, 42 U.S.C. §§ 1395, et seq., establishes a program of health insurance for the elderly and disabled. Medicare Part D is a supplemental program that allows beneficiaries to purchase prescription drug coverage from federally-subsidized plans offered by private insurers. 42 U.S.C. §§ 1395w-101, et seq. The premiums of low-income persons are paid for by the federal government. 42 U.S.C. § 1395w-114(a)(1)(A). Most of the remaining Part D enrollees pay their premiums directly to their private plans. A comparatively small number, however, have opted to have their premiums withheld from their monthly Social Security checks and then forwarded to the private plans by the government. See 42 U.S.C. § 1395w-113(c)(1) (incorporating 42 U.S.C. § 1395w-24(d)(2)). The substantive issue in this case is whether Part D enrollees who opt to have their premiums withheld and forwarded at taxpayer expense have a greater right to keep mistakenly-issued refunds of premiums than any other Part D enrollee who might erroneously receive a similar refund directly from his private drug plan. Plaintiffs claim that Part D enrollees who have their premiums forwarded by the government have special hardship rights that other enrollees do not have. Defendant contends that they do not.

 A. **The Proceedings in this Court**

As this Court will recall, this case arose because of a processing error in August 2006, which caused the erroneous refund of $47 million in Part D premiums to about 230,000 of the enrollees whose premiums were being withheld from their Social Security checks. Action Alliance of Senior Citizens v. Leavitt, 483 F.3d 852, 854 (D.C. Cir. 2007), pet. for reh'g and reh'g en banc filed (D.C. Cir. May 30, 2007). Enrollees who paid their premiums directly were not affected. The mistaken refunds averaged $215 each. Id. After learning of the error in September

2006, the Secretary of Health and Human Services sent a letter to the affected beneficiaries asking them to return the money.  Id.  Beneficiaries who believed that recoupment of their unearned windfall would pose a personal hardship, however, were permitted to request permission to repay the money in installments of up to seven months.  Id.

On September 15, 2006, two advocacy organizations – Action Alliance for Senior Citizens and the Gray Panthers – brought suit in this Court seeking to block the effort to recover the money and to force the Secretary to return the refunds that had been recovered to date.  The gravamen of the complaint was that a particular Medicare statute, 42 U.S.C. § 1395gg(c), makes it unlawful for the Secretary to recover mistaken refunds of Part D premiums in "'any case'" where the beneficiary is "'without fault'" and recovery "'would defeat the purposes'" of the Medicare Act or "'would be against equity and good conscience.'"[1]  Defendant argued that the hardship exemption in § 1395gg(c) does not apply to the mistaken refund of Part D premiums because such a premium is not a "payment" for "items or services" made "to a provider of services or other person" within the limited meaning of 42 U.S.C. § 1395gg(b)(1).[2]  He also challenged the standing of the two advocacy groups to sue.  In an effort to shore up their case on the standing issue, plaintiffs amended their complaint to add an individual plaintiff.  First

---

[1] Complaint for Declaratory, Injunctive and Mandamus Relief at ¶ 15 (quoting 42 U.S.C. § 1395gg(c)) (Doc. 1); see also Memorandum in Support of [Plaintiffs'] Motion for a Temporary Restraining Order and for a Preliminary Injunction, with Request for Expedited Hearing at 4-5 (identifying §1395gg(c) as "the applicable statute") (Doc. 3); Plaintiffs' Opposition to Defendant's Motion to Dismiss and Reply in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pl. Opp.") at 13, 14 (identifying what plaintiffs contended is the "relevant" text in § 1395gg(c)) (Doc. 8).

[2] Defendant's Memorandum of Points and Authorities in Support of His Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Def. Dismiss Mem.") at 23-27 (Doc. 7).

Amended Complaint for Declaratory, Injunctive and Mandamus Relief ("First Amended Compl.") at ¶¶ 9, 39-45 (Doc. 13).

On September 27, 2006, this Court denied defendant's motion to dismiss and granted plaintiffs' motion for a preliminary injunction. In its subsequent written opinion, the Court acknowledged that "[t]he entire framework of § 1395gg(a)-(c) seems to concern only payments to providers for <u>items and services</u>," and therefore "does bear the Secretary's interpretation." <u>Action Alliance for Senior Citizens v. Leavitt</u>, 456 F. Supp. 2d 11, 18 (D.D.C. 2006), <u>rev'd</u>, 483 F.3d 852 (D.C. Cir. 2007), <u>pet. for reh'g and reh'g en banc filed</u> (D.C. Cir. May 30, 2007). However, it held that the Secretary's refusal to extend the hardship exemption to mistaken refunds of Part D premiums was unreasonable in light of regulations that extended hardship treatment to similar overpayments under other parts of the Medicare program. <u>Id</u>. at 19. On September 29, 2006, defendant appealed the Court's ruling (Doc. 17) and moved to stay the preliminary injunction pending appeal (Doc. 16). This Court granted a temporary stay on October 4, 2006 (Doc. 19). On the same day, the Court of Appeals stayed the preliminary injunction and established an expedited briefing schedule (Doc. 21).

On October 12, 2006, plaintiffs served defendant with discovery requests, even though no scheduling conference under Fed. R. Civ. P. 26 had been set, no scheduling meeting between the parties had taken place, no joint scheduling report had been submitted to the Court, and the only substantive issue in the case was a question of statutory construction. On October 26, 2006, defendant moved to stay all further proceedings in this Court pending resolution of the preliminary-injunction appeal. In support of the motion, he argued that "the interests of comity and judicial efficiency" favored a stay because "[f]inal resolution of the appeal will likely dispose of the legal issues presented in the entire civil action." Defendant's Motion to Stay Further

Proceedings Pending a Final Decision of the Court of Appeals at 1 (Doc. 22).  Specifically, the Secretary contended that resolution of the scope of 42 U.S.C. § 1395gg(c) by the Court of Appeals would significantly affect future proceedings in this Court.

> If the Court of Appeals accepts the Secretary's contention that there is no entitlement to a waiver in this context, the case will be dismissed.  Therefore, the resolution of the appeal will not only significantly impact, but may completely dispose of, the issues before this Court.  At the very least, the Court of Appeals' ruling will likely narrow in scope any remaining issues.

Id. at 3.  Defendant therefore urged that, "in the interest of judicial economy, all proceedings in the District Court, including but not limited to discovery and the filing of the Secretary's response to Plaintiffs' First Amended Complaint, should be stayed pending final resolution of the appeal" of the preliminary-injunction order.  Id. at 3-4.

Plaintiffs opposed the stay on the ground that "[s]uch a drastic measure would serve no purpose," Plaintiffs' Opposition to Defendant's Motion to Stay Further Proceedings Pending a Final Decision of the Court of Appeals at 2 (Doc. 23), other than to "impede plaintiffs' timely and efficient development of their claims."  Id. at 7.  They strenuously challenged defendant's contention that a stay would conserve judicial resources, arguing that the Secretary could not "claim that resolution of the interlocutory appeal will conclusively determine this proceeding and avoid the need for further litigation," because the "timing" and "nature" of the Court of Appeals decision were "unknown."  Id. at 5.  On November 2, 2006, plaintiffs also belatedly filed a motion for leave to conduct expedited discovery, arguing that they "should not be forced to wait until the Court of Appeals rules on the Secretary's appeal of the preliminary injunction order," Plaintiffs' Motion for an Order Allowing Discovery, or, in the Alternative, Scheduling the Local Rule 16.3(a) Conference ("Pl. Discovery Motion") at 3 (Doc. 24), because "time is of the essence," id. at 1, the appellate decision might not be final until "many months from now," id.

at 3, and "the totality of the circumstances supports allowing discovery to proceed as expeditiously as possible." Id. at 4. Plaintiffs also chided defendant for not moving for a protective order to stay discovery, id. at 2, apparently unaware that an order to stay all proceedings is a protective order that encompasses discovery.

On November 7, 2006, this Court granted defendant's motion and stayed "all proceedings in this matter, including but not limited to discovery and defendant's response to plaintiffs' first amended complaint." Order to Stay Proceedings at 1. The stay was to last "until thirty days after the final decision" of the Court of Appeals on defendant's appeal of the preliminary-injunction. Id. Although the order was not accompanied by an opinion memorandum, the decision was presumably based on the familiar standard which required the Court to strike an "even balance" amongst the "competing interests," with an eye towards "economy of time and effort for itself, for counsel, and for litigants." Landis v. North Amerian Co., 299 U.S. 248, 254-55 (1936). In this case, the proper balance was sufficiently obvious that the Court was able to rule in summary fashion before defendant's reply memorandum was due.

**B. The Proceedings in the Court of Appeals**

The Secretary filed his opening brief before the Court of Appeals on November 3, 2006. With respect to plaintiffs' likelihood of success on the merits, he argued that "[e]ven a cursory review" of the hardship provision in 42 U.S.C. § 1395gg(c) shows that it is not applicable to mistakenly-issued refunds of Part D premiums. Brief for the Appellant at 16 (Def. Ex. A) (attached to this memorandum). He also challenged this Court's balancing of the equities, id. at 27-29, and the scope of the preliminary-injunctive relief. Id. at 25-27.

Plaintiffs' appellate memorandum took the case in a new direction. Although plaintiffs defended their original § 1395gg(c) theory, they characterized that statute as merely an

-6-

"alternative source" of their members' putative right to request a hardship exemption to the recovery of mistakenly-issued Part D premium refunds. Brief for Appellees at 29 (Def. Ex. B) (attached to this memorandum). Their primary theory was that the putative right to a waiver of the refund recovery was created outside the Medicare Act in 42 U.S.C. § 404(b), which provides that whenever "more than the correct amount of payment" of Social Security benefits has been made, no recovery may be made from "any person who is without fault if such adjustment or recovery would defeat the purpose" of Title II of the Social Security Act, 42 U.S.C. §§ 401-424a, "or would be against equity and good conscience." See Brief for Appellees at 22-29. This § 404(b) argument was made for the first time on appeal. Compare Pl. Opp. at 14-15 (urging this Court not to focus on "the waiver provision of Title II of the Social Security Act").

The Secretary's reply brief demonstrated that, "[e]ven assuming that this argument is properly before the Court," Reply Brief for the Appellant at 13 (Def. Ex. C) (attached to this memorandum), it is unavailing because 42 U.S.C. § 404(b) does not apply to Part D premiums any more than § 1395gg(c) does. Section 404(b) refers exclusively to overpayments of the old-age and disability benefits commonly known simply as "Social Security." Because premiums paid to drug plans under Medicare Part D are not such benefits (indeed, Medicare Part D was not even created until more than half a century after the Social Security program was established), the Secretary argued that there was no merit in plaintiff's new theory that § 404(b) must be construed to create a hardship exemption for erroneous refunds of Part D premiums. Reply Brief for the Appellant at 13-16.

Perceiving the possibility of a threshold jurisdictional issue, the Court of Appeals ordered the parties to file supplemental briefs on "the jurisdictional basis for the district court's review, in light of 42 U.S.C. §§ 405(g), 405(h), 1395ii, Shalala v. Illinois Council on Long Term Care, Inc.,

529 U.S. 1 (2000), and any other provisions or cases bearing on the subject." Order dated February 1, 2007 (Def. Ex. D) (attached to this memorandum). In response, the Secretary argued, among other things, that judicial review of plaintiffs' new § 404(b) theory would not be proper until after exhaustion of the administrative remedies established by Congress in 42 U.S.C. § 405(g). See Supplemental Brief for the Appellant at 3-9 (citing, inter alia, Illinois Council, 529 U.S. 1, Heckler v. Ringer, 466 U.S. 602, 617 (1984), Weinberger v. Salfi, 422 U.S. 749 (1975), and Mathews v. Eldridge, 424 U.S. 319, 328 (1976)) (Def. Ex. E) (attached to this memorandum).

     Plaintiffs' concern about extended delay pending appeal turned out to be ill-founded. The Court of Appeals issued a ruling a month and a half after the appellate briefing was completed. The decision found the § 1395gg(c) and the § 404(b) theories both wanting, but for different reasons. With respect to § 1395gg(c), the Court concluded that administrative review was not available under the procedural provisions applicable to Medicare Part D claims, 42 U.S.C. §§ 1395w-22(g)(4)-(5); 1395w-104(h)(1), and therefore that judicial review did not first require exhaustion. Action Alliance, 483 F.3d at 858-60. However, the Court held that § 1395gg(c) "has nothing to do with erroneous refunds of Medicare premiums," id. at 860-61, describing this analysis as "the easy part of the case." Id. at 860. The Court also held that it would not have jurisdiction over plaintiffs' § 404(b) theory until a claim challenging recoupment had been presented "directly" to the Commissioner of Social Security and the claim had been "denied" by the Commissioner, id. at 858, in a manner sufficient to constitute a "final decision of the Commissioner" within the meaning of 42 U.S.C. § 405(g). The Court did not address the extent to which levels of administrative appeal must be exhausted to reach such a "final" decision. Nor did it address the merits of plaintiffs' new § 404(b) theory, other than to observe that the

-8-

argument was in "some tension" with the original § 1395gg(c) theory.  Action Alliance, 483 F.3d at 858.

Although plaintiffs apparently concede defeat on their original § 1395gg(c) claim, they filed a petition before the Court of Appeals on May 30, 2007 requesting rehearing on the "sole issue" of whether "the district court had jurisdiction over the Medicare beneficiaries' claims." Appellees' Petition for Rehearing or for Rehearing En Banc at 1-2 (Def. Ex. F) (attached to this memorandum).  Unless the Court of Appeals directs otherwise, the filing of the petition for rehearing automatically "stays the mandate until disposition of petition."  Fed. R. App. P. 41(d)(1).  At this time, therefore, no "final decision" on the preliminary-injunction appeal has been issued, Order to Stay Proceedings at 1, because "[a]n appellate court's decision is not final until its mandate issues."  Charpentier v. Ortco Contractors, 480 F.3d 710, 713 n.10 (5th Cir. 2007) (quoting Bryant v. Ford Motor Co., 886 F.2d 1526, 1529 (9th Cir. 1989), and Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97 (3d Cir. 1988)).[3]

**C. Recent Events**

In apparent response to the decision of the Court of Appeals, counsel for the named plaintiff subsequently wrote the Commissioner of Social Security requesting either a waiver of recovery of the refund or an opportunity to apply for one.  The correspondence stated that plaintiff received an erroneous premium refund of $161.70 and that she subsequently spent the money to pay bills.  Letter of Brad S. Plebani dated May 4, 2007 at 1 (Pl. Ex. B) (attached to

---

[3] If the Court grants the petition for rehearing, it may issue a "final disposition" without reargument, Fed. R. App. P. 40(a)(4)(A), restore the case to the calendar for reargument or resubmission, Fed. R. App. P. 40(a)(4)(B), or issue any other appropriate order.  Fed. R. App. P. 40(a)(4)(C).  If the Court denies the petition, the mandate issues within seven days, Fed. R. App. P. 41(b), and the decision becomes "effective" at that time.  Fed. R. App. P. 41(c).

proposed second amended complaint). For that reason alone, the letter asserted, repayment of the erroneous refund in monthly installments of $23.10 each "would pose a serious hardship." Id.[4] The Commissioner replied that he "is still considering" the issues raised in the letter and "will be issuing an appropriate response to your client's waiver request shortly." Letter of Beatrice M. Disman dated June 7, 2007 at 1 (Def. Ex. G).

On May 31, 2007, plaintiffs filed a motion in this Court seeking to vacate the stay and amend their complaint a second time. The proposed second amended complaint apparently seeks to assert plaintiffs' theory of the case based on 42 U.S.C. § 404(b) and to allege facts which plaintiffs contend would establish that they have taken sufficient administrative steps to satisfy exhaustion requirements. For the reasons stated below, the motion to vacate the stay should be denied, and the motion to amend the complaint should be either stricken or denied, without prejudice to its refiling after the stay has expired by its own terms.

## STANDARD OF REVIEW

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n.6 (1998) (quoting Landis, 299 U.S. at 254-55). It follows that, "[l]ogically, the same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." Canady v. Erbe Elektromedizin GmbH, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) (citation omitted); see also

---

[4] Plaintiffs' amended complaint elaborates that plaintiff, a 65-year-old widow who resides with her second husband in rural Kentucky, has a family income of $2,214.12 a month, but has monthly expenses of $3,067. First Amended Compl. at ¶¶ 9, 39-43. Although she alleges that she has "a large monthly loan payment," id. at ¶ 43, she does not allege specifically that she is currently borrowing money to make up the alleged $850-a-month shortfall between income and expenses. The proposed amended complaint does not mention savings or other possible assets that might be used to meet a repayment obligation of $162.70 in seven monthly installments. She avers that her current monthly Part D premium is $23.15. Id. at ¶ 39.

Landis, 299 U.S. at 257 (court that ordered a stay may "be persuaded at a later time to undo what it has done"). However, once the proponent of a stay has met his threshold "burden of establishing its need," Clinton v. Jones, 520 U.S. 681, 708 (1997), the burden shifts to the opponent to demonstrate that "circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate," Canady, 271 F. Supp. 2d at 74, and some revision is needed to "bring about a fitting correspondence between rulings and realities." Landis, 299 U.S. at 258. Where "the reasons for imposing the stay have not lost their force" and "remain valid," a motion to vacate or modify the stay should be denied, Berkshire Med. Ctr. v. Thompson, 2007 WL 1549085 at *2 (D.D.C. May 25, 2007); Milton Hosp. v. Thompson, 2007 WL 1549078 at *2 (D.D.C. May 25, 2007); Dana-Farber Cancer Inst. v. Thompson, 2007 WL 1549081 at *2 (D.D.C. May 25, 2007), and this is particularly true where the issues in the case "require technical expertise and that expertise is available through an administrative agency" before which proceedings are underway. Canady, 271 F. Supp. 2d at 75. Both considerations favor continuation of the existing stay here.

## ARGUMENT

### I. THERE HAS BEEN NO CHANGE IN CIRCUMSTANCES THAT WARRANTS LIFTING THE EXISTING STAY PREMATURELY.

Plaintiff's present motion identifies no changed circumstances that might even theoretically support a conclusion that the stay entered in this action has lost its force or ceased to serve its intended purpose. Indeed, only two changes have occurred at all, and both of them support, rather than undermine, the desirability of the stay.

First, the Court of Appeals is now demonstrably closer to a final decision on the preliminary-injunction appeal than it was seven months ago, when the staying pending appeal

was entered by this Court. In fact, the mandate of the Court of Appeals would have issued earlier this month but for plaintiffs' own decision to prolong the proceedings by petitioning for rehearing. The conclusions in the decision on which rehearing has been sought – that plaintiffs' original § 1395gg(c) theory lacks merit and their § 404(b) theory is premature prior to exhaustion of administrative remedies – would obviously do much to narrow, if not obviate entirely, any issues remaining for decision by this Court. The same would be true in the (albeit unlikely) event that the Court of Appeals were to modify the decision in some manner as a result of plaintiffs' pending request for rehearing. There is no reason, therefore, to suddenly commence the very kind of simultaneous proceedings in the appellate and district courts that this Court was careful to avert when it issued the stay pending appeal in the first place.

Second, the individual plaintiff has now sent a letter to the Commissioner of Social Security seeking to invoke the hardship waiver that she contends exists under 42 U.S.C. § 404(b) to limit the right of the government to recoup mistakenly-made refunds of Medicare Part D premiums. The Commissioner has yet to respond. If the request were granted, that outcome would obviously change the nature of this case. In the more likely event that the request is denied, however, that development still would inform the issues by, among other things, providing an agency interpretation of the scope of § 404(b), an analysis to which this Court, in turn, could give the appropriate degree of judicial deference. See Barnhart v. Walton, 535 U.S. 212, 217-18 (2002); United States v. Mead Corp., 533 U.S. 218, 227 (2001). There is little point, at this juncture, in having the parties brief these issues prematurely, either in the context of an opposition to plaintiffs' motion to amend their complaint or in subsequent proceedings. It makes more sense to simply wait and see whether the Commissioner responds to plaintiffs' letter before the mandate issues from the Court of Appeals, and then reap the potential effort-conserving

benefit of whatever narrowing of the issues may flow from that administrative action. The motion to lift the stay should therefore be denied.[5]

### II. PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT SHOULD BE STRICKEN OR, IN THE ALTERNATIVE, DENIED WITHOUT PREJUDICE.

Plaintiffs' additional motion to amend their complaint warrants little attention. Because, for the reasons stated above, the stay should not be lifted, plaintiffs should not be allowed to file any other new motions. Indeed, for defendant to file an opposition to plaintiffs' motion to amend at this time would itself violate the stay, to say nothing of consuming the judicial, party and public resources that the stay is designed to conserve pending a final decision on appeal. The motion to amend the complaint should therefore be stricken or, in the alternative, denied without prejudice to its being refiled after the end of the stay.[6]

---

[5] The portion of plaintiffs' motion that is labeled "argument" does not address the question of lifting the stay at all, but apparently presumes the stay has ended and proceeds to argue in favor of granting plaintiffs leave to amend their complaint. Plaintiffs' Motion to Vacate Stay and Motion for Leave to File Second Amended Complaint at 6-9 (Doc. 27). Statements made in earlier portions of the motion, however, actually support the efficiency of the stay. The propositions that "[t]his case is at an early stage," id. at 5 (emphasis omitted), and that no resources have yet been expended on discovery, id., and that "there is considerable work to be done," id., all counsel in favor of waiting for a final decision by the Court of Appeals before placing additional burdens on the resources of this Court, the parties and the public fisc. To the extent that plaintiffs are merely impatient to move forward, their arguments were rejected by the Court seven months ago when it entered the stay.

[6] For the reasons discussed above, a motion by defendant to strike plaintiffs' motion to amend as prematurely filed would itself violate the stay and require prior leave of this Court. It would only clutter the docket, however, for defendant to file a motion to lift the stay for the temporary purpose of preserving the stay. To the extent that such a motion by defendant might be deemed to be necessary in order to effect the outcomes urged here, defendant respectfully requests that this memorandum be treated as such.

**CONCLUSION**

For the reasons stated, plaintiffs' motion to vacate the existing stay should be denied, and plaintiffs' motion to amend their complaint should be stricken or denied.

|  |  |
|---|---|
| | Respectfully submitted, |
| OF COUNSEL:<br>DANIEL MERON<br>General Counsel | PETER D. KEISLER<br>Assistant Attorney General |
| KATHLEEN H. MCGUAN<br>Associate General Counsel | JEFFREY A. TAYLOR<br>United States Attorney |
| MARK D. POLSTON<br>Deputy Associate<br>General Counsel for Litigation | /s/ Peter Robbins<br>RICHARD G. LEPLEY<br>PETER ROBBINS<br>Department of Justice |
| MARCUS H. CHRIST<br>LAWRENCE J. HARDER<br>Attorneys<br>United States Department of<br>Health and Human Services | 20 Massachusetts Avenue, N.W., Room 7142<br>Washington, D.C. 20530<br>Tel: (202) 514-3953<br><br>Attorneys for Defendant |