UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
ACTION ALLIANCE OF SENIOR CITIZENS,         )
GRAY PANTHERS, LUCY CAROLYN LOVEALL,        )
                                            )
                          Plaintiffs,       )
                                            )
            v.                              )   C.A. No. 06-1607 (HHK)
                                            )
MICHAEL LEAVITT, Secretary of Department    )
of Health and Human Services,               )
                                            )
                          Defendant.        )
_____ )

# MOTION FOR LEAVE TO FILE SUPPLEMENTAL AND SECOND AMENDED COMPLAINT

Pursuant to F.R.Civ.P. 15(a) and (d) and LCvR 7(i), plaintiffs move for leave to file a Supplemental and Second Amended Complaint. This motion is based on the Statement of Points and Authorities below, the Supplemental and Second Amended Complaint (hereinafter, "New Complaint") lodged with this motion, and on the pleadings and other documents previously filed in this matter.

## STATEMENT OF POINTS AND AUTHORITIES

### INTRODUCTION

This case raises a significant issue about the government's handling of the new Medicare Part D program. The particular context in which it arises is itself important, as the challenged action has adversely affected about 230,000 beneficiaries, most of whom have fixed and limited incomes, because of a mistake attributed solely to the government. At issue is the action of the defendant Secretary of Health and Human Services ("Secretary") in demanding repayment of Title II monies that were erroneously paid to

these beneficiaries, without first affording them the right to request a hardship waiver and notice of that right, and the right to a prior oral hearing. In addition, the Secretary's decision not to accord these beneficiaries the right to seek waiver of recovery is also significant for the future of the Part D program as it indicates that he will not apply hardship waiver rules to other incorrect payments as well.

The individual plaintiff, Lucy Carolyn Loveall, is a Medicare beneficiary who received an erroneous Title II payment,[1] applied that amount toward her bills, and then received a letter from the Secretary demanding that she return the payment. The organization plaintiffs, Action Alliance and Gray Panthers, provide information and assistance to Medicare beneficiaries, some of whom also received the erroneous payment based on their premium amounts. The Secretary's policy has deprived the memberships served by these organizations of the information and assistance necessary to make an informed choice as to how to proceed.

Plaintiffs filed this lawsuit to enforce the rights to seek waiver of recovery of the erroneous payments, to notice of that right, and to the right to an oral hearing before any recovery is effected. Pursuant to F.R.Civ.P. 15(a), they seek to amend their complaint specifically to invoke the Title II waiver provisions (42 U.S.C. § 404(b), 20 C.F.R. § 404.501 *et seq*., and the Program Operations Manual System (POMS)) as the proper

---

[1] Although the government persists in referring to this as an erroneous or mistaken "premium refund" (see, *e.g*., Letter of Aug. 13, 2007 to plaintiffs' counsel from SSA, attached as Exhibit H to the New Complaint), that terminology is not accurate. The mistaken payments to these beneficiaries were *based on* the amounts of premiums withheld from their Social Security benefits in the past, but they were not *refunds* of the premiums. The withheld premium amounts were properly passed on to the prescription drug plans by the agencies involved, the Centers for Medicare & Medicaid Services (CMS) and the Social Security Administration (SSA), to pay for the beneficiaries' Part D participation. SSA then paid these 230,000 beneficiaries extra Social Security benefits that reflected one or more month's past premium withholdings.

authority for the relief they seek, and to dispose of their claims based on the Medicare waiver statute (42 U.S.C. § 1395gg(c)) and regulations. They also wish to amend the complaint to add the Commissioner of the Social Security Administration ("Commissioner") as a defendant. Furthermore, pursuant to F.R.Civ.P. 15(d), they seek to supplement their previous complaint to provide updated information relevant to the issue of this Court's jurisdiction.

## I.    STATEMENT OF THE FACTS

### A.    Procedural posture

1. *Original proceedings in the district court*: On September 15, 2006, the plaintiff organizations filed the original complaint and their Motion for Temporary Restraining Order and a Preliminary Injunction, contending that the Secretary is obligated to provide Part D beneficiaries with the right to seek waiver of recovery when they receive incorrect payments, notice of that right, and the right to pre-recovery oral hearings on a waiver request. The Secretary filed a motion to dismiss, contending that plaintiffs lacked standing, and argued in his opposition to plaintiffs' motion that Part D beneficiaries receiving erroneous premium refunds were not entitled to waiver of recovery. Plaintiffs' later filed their First Amended Complaint (as of right pursuant to F.R.Civ.P. 15(a)), adding Lucy Carolyn Loveall as a plaintiff. The Secretary has not filed an answer.

On September 27, 2006, this Court granted the motion for a preliminary injunction and issued an order of relief requiring the Secretary to cease his collection efforts until he had notified the affected beneficiaries of their right to seek waiver and had given them an opportunity to act on that right. In its opinion, the Court held that the beneficiary organizations met the standards for representational standing and all four of

the factors for issuance of a preliminary injunction, including a substantial likelihood of success on the merits. The Court concluded that the Social Security statute, 42 U.S.C. § 404(b), cited in the complaint, supplied the authorization for waiver of recovery of Part D amounts erroneously refunded. *Action Alliance of Senior Citizens v. Leavitt,* 456 F.Supp.2d. 11, 15-16, 16-24 (D.D.C. 2006), vacated on other grounds, 483 F.3d 852 (D.C.Cir. 2007).

On September 29, 2006, the Secretary filed a notice of appeal and sought stays pending appeal in both this Court and the appellate court. On October 4, the Court of Appeals granted a stay pending appeal. On November 7, this Court ordered a stay of further proceedings until thirty days after the final decision of the Court of Appeals.

2. *Proceedings in the Court of Appeals*: Although the government itself did not question this Court's jurisdiction either in this Court or in the Court of Appeals (except with respect to the original plaintiffs' standing), on April 17, 2007 the Court of Appeals decided, without ruling on the merits of plaintiffs' claim under 42 U.S.C. § 404(b), that the district court did not have jurisdiction over that claim. *Action Alliance of Senior Citizens v. Leavitt,* 483 F.3d 852 (D.C.Cir. 2007).[2] The Court determined that the organization plaintiffs failed to satisfy the "presentment" requirement of the Social Security Act's review provision, 42 U.S.C. § 405(g), because they had not specifically cited § 404(b) when they presented their claim to the Secretary prior to filing the complaint. *Id.* at 857. The Court held that the individual plaintiff had not satisfied

---

[2] After oral argument, the appellate panel had issued an order directing the parties to submit supplemental briefs on the "jurisdictional basis for the district court's review." Order of Feb. 1, 2007 in No. 06-5295 (D.C.Cir.). Only in response to that order did the government dispute this Court's jurisdiction.

4

presentment because, although she objected to the proposed recovery and had not paid the money back, she had not explicitly asked that its recovery be waived. *Id.*[3]

Plaintiffs fail to see the fairness or logic in requiring, for the sake of a district court's jurisdiction, that the complaining party specifically use the term "waiver" (and/or cite the United States Code provision) at the first step of the administrative process, especially when the heart of the complaint is that the agency failed to inform plaintiffs that they have a right to make such a request. More important, though, they also believe that this requirement conflicts with Supreme Court and prior D.C. Circuit precedent. For those reasons, on May 30, 2007, they filed a petition for rehearing and rehearing en banc. That petition was denied on July 13, 2007.

3. *Proceedings after the Court of Appeals' decision*: At the same time, compelled by the expectation that they would prevail and obtain relief through a decision on the merits, plaintiffs fulfilled the requirements of presentment imposed by the appellate court. They have now specifically presented their claim of a right to waiver and the notice of waiver, pursuant to 42 U.S.C. § 404(b,) in writing to the Secretary and Deputy Administer of CMS, and to the Commissioner of SSA. See Exhibits B and C to the New Complaint, filed with this Motion.

In response to these requests, agency officials have gone back and forth as to whether SSA or CMS is the proper entity to resolve the questions raised in plaintiffs' presentment letters. SSA first stated that it was CMS' responsibility, but later that it (SSA) was still considering the request. Exhibits D and E to the New Complaint. In its

---

[3] The Court of Appeals did determine that this Court had jurisdiction (pursuant to 28 U.S.C. § 1331) over plaintiffs' contention that the waiver provision of the Medicare statute, 42 U.S.C. § 1395gg(c), required CMS to provide the right to waiver, but rejected that claim on the merits. 483 F.3d at 858-861.

letter of August 2, 2007 SSA again stated that CMS has jurisdiction over the issue and the request was therefore being referred to that agency. Exhibit G to the New Complaint. In the most recent letter from SSA (dated August 13, 2007), SSA appeared to assume that it is the responsible agency, but that the § 404(b) waiver provision does not apply to these erroneous payments. Exhibit H to the New Complaint. In the meantime, CMS stated in its letter of July 16, 2007 that it has no authority in this matter and that SSA would respond to the plaintiffs' demands. Exhibit F to the New Complaint.

With all these inconsistencies and changes its position, it is difficult to know exactly where the agencies stand, but it does appear that CMS denies all responsibility for considering waiver and that SSA either also denies responsibility or contends that § 404(b) is not applicable. The short of it is that the agencies deny that the beneficiaries are entitled to the rights to waiver, to notice of the right to waiver, and to a prior oral hearing.

Anxious to reach the merits, on May 31, 2007 the plaintiffs filed a motion to vacate the stay and for leave to file an amended complaint. The Secretary opposed that motion, contending that plaintiffs should wait for the stay to expire of its own accord in order to avoid simultaneous proceedings in the two courts. This Court denied the motion to vacate the stay on July 24, 2007.

The Court of Appeals issued the mandate on July 27. Under the terms of the stay order, the stay expired "thirty days after the final decision of the Court of Appeals." Assuming as defendant has that "the final decision" was the issuance of the mandate, the thirty days began to run on July 27, and the stay expired on August 26.

Accordingly, with the stay no longer in effect, plaintiffs seek to amend the complaint to add the SSA Commissioner as a defendant (see New Complaint, ¶ 11) and

to clarify their claims to specify that the defendants' actions violate the Title II waiver provision, 42 U.S.C. § 404(b) (but do not implicate the Medicare (Title XVIII) waiver statute, 42 U.S.C. § 1395gg(c)). See New Complaint, ¶¶ 15-18, 47, 49. Furthermore, they seek to supplement the complaint to include the presentment of their claims in accordance with the Court of Appeals' decision and thus to cure the jurisdictional defect that that Court unearthed.[4]

### B. This case is at an early stage.

The complaint was filed and served on September 15, 2006. Plaintiffs timely filed a First Amended Complaint as of right on September 27, 2006. The Secretary has not filed an answer to the Amended Complaint.

In the 11-1/2 months since the original complaint was filed, the proceedings were stayed for more than 9-1/2 months, from November 7, 2006 until August 26, 2007. Moreover, plaintiffs took action quickly to cure the jurisdictional defect cited by the Court of Appeals and have acted as expeditiously as possible to have that effort formally reflected through the filing of an updated complaint. As such, this case is at an early stage, and the efficient administration of justice suggests that plaintiffs be given leave to file their New Complaint so that this matter may proceed to resolution on the merits without further interruption.

---

[4] Amendments subsequent to an amendment of right require that a plaintiff first seek leave of court or obtain the opposing party's written consent before filing another amended complaint. See F.R.Civ.P. 15(a). As previously noted, plaintiffs sought permission to file the second amended complaint, but the defendant Secretary declined to grant consent and opposed their original motion on this issue.

## II. COURTS APPLY A LIBERAL STANDARD TO MOTIONS FOR LEAVE TO FILE BOTH AMENDED AND SUPPLMENTAL COMPLAINTS, AND NO REASON EXISTS FOR NOT ALLOWING THIS COMPLAINT TO BE FILED.

Federal Rule of Civil Procedure 15(a) states that leave to file an amended complaint "shall be freely granted when justice so requires." Accordingly, the Court of Appeals has stated: "It is common ground that Rule 15 embodies a generally favorable policy toward amendments." *Davis v. Liberty Mutual Ins. Co.,* 871 F.2d 1134, 1136-1137 (D.C.Cir. 1989) (footnote and citations omitted). While the decision to grant leave to amend is left to the district court's discretion, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith, or dilatory motive…repeated failure to cure deficiencies by [previous] amendments…[or] futility of amendment.'" *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir. 1996) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)); see also, *e.g.*, *Harris v. Secretary, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 344 (D.C.Cir. 1997).

In addition, plaintiffs seek to supplement the complaint to add allegations about events that took place after the First Amended Complaint was filed, which is authorized by F.R.Civ.P. 15(d).

> The purpose for filing a supplemental pleading is to facilitate a proper decision on the merits and avoid the dismissal of potentially meritorious claims due to procedural missteps. Thus, the court should freely grant a party's request to file a supplemental pleading when the supplemental facts connect it to the original pleading.

*Health Ins. Ass'n of America v. Goddard Claussen Porter Novelli*, 213 F.R.D. 63, 66 (D.D.C. 2003) (quotation marks, parenthetical notes, and citations omitted).

> The same principles that support the liberal amendment of pleadings also apply to supplemental pleadings .... Generally, the standard used by courts

8

> in deciding to grant or deny leave to supplement is the same standard used in deciding whether to grant or deny leave to amend.

3 *Moore's Federal Practice*, § 15.30 at 15-109 (Matthew Bender 3d ed.); see also, *e.g., Health Ins. Ass'n*, 213 F.R.D. at 66.

As a general rule the courts look to four factors in deciding whether to allow an amendment. These are prejudice to the opposing party, undue delay, bad faith, and futility of the proposed amendment. See, *e.g., Foman,* 371 U.S. at 182; *Harris*, 126 F.3d at 344.

1. *No prejudice*: The defendant will not suffer prejudice if the New Complaint is filed, especially in light of the early stage of the case and the fact that discovery has not begun. To date, the Secretary has not answered. By this amendment, plaintiffs are not changing the direction or the scope of the litigation. They simply clarify the basis upon which they are relying for the rights to waiver of recovery and notice. The amended claims invoking the Title II waiver provision (42 U.S.C. § 404(b)) are closely related to the original claims made pursuant to the Medicare waiver provision (42 U.S.C. § 1395gg) and grow out of the same circumstance as those claims. § 404(b) was discussed in the original complaint, relied upon by this Court as the legal authority for granting plaintiffs' motion for preliminary injunction, and thoroughly addressed by both sides in the appellate briefings. As such, the Secretary could not in good faith suggest that the added claim unfairly presents novel arguments or theories.

In addition, the inclusion of the SSA Commissioner as a defendant will not prejudice the Secretary. If anything, joining the Commissioner will help to ensure timely adjudication of the case and allow the court to order appropriate relief from the proper party or parties.

9

Finally, there is no prejudice to the Secretary in allowing plaintiffs to allege the new facts that will enable the Court to exercise jurisdiction over this matter. The Secretary never questioned the Court's jurisdiction in the first instance (except with respect to the organizations' standing), but only argued against it when the appellate court requested supplemental briefing on the issue. The prejudice or harm that would accrue to the plaintiffs if the amendment were not allowed is far greater than the harm, if any, caused to the Secretary in allowing it, and the courts have consistently recognized the propriety of allowing supplemental complaints in circumstances like this. See *infra* at 11-13.

    2.    *No undue delay*: This case was stayed in its infancy pending resolution of the government's appeal. Plaintiffs are filing this motion as soon as possible upon expiration of the stay, and, indeed, sought to file the revised complaint sooner by requesting that the stay be vacated. The Secretary has not answered the existing complaint, and discovery has not begun. Moreover, it is hard to argue that plaintiffs delayed in refining their claims when these claims were fully analyzed and briefed by the parties during the interlocutory appeal.

    3.    *No bad faith*: There is not the remotest indication of bad faith here. Plaintiffs are not trapping defendant or otherwise placing him in an untenable position. They are not bringing this motion with any hidden agenda. Plaintiffs are simply using the guidance that was made available to them in the appellate court's decision, and which they acted upon expeditiously, to ensure that this Court has jurisdiction to adjudicate their claims, that all legitimate claims are raised, and that all potentially responsible parties are included as defendants so that the court may accord full relief.

Over the past months, plaintiffs have gained increasing knowledge of the interaction between CMS and SSA and their dual responsibility for carrying out Part D premium collections and payments. Accordingly, plaintiffs now seek to add the Commissioner because they believe in good faith that he bears liability under the claims pled. Moreover, the plaintiffs have acted in good faith in their attempt to re-present their claims to the Secretary.

4. *No futility*: The proposed amendments are not futile. The amended claims more specifically relying on 42 U.S.C. § 404(b) are legitimate – as this Court's decision granting the motion for a preliminary injunction indicates. Plaintiffs are confident that they will prevail on their claims because the statute, and the regulations and policy applying that provision, explicitly afford them a right to seek waiver of recovery and to be notified of that right when they receive an erroneous payment of Title II benefits. There is likewise no futility in including the Commissioner as a defendant. It is now apparent that the claims in this case implicate SSA as well as CMS. Finally, plaintiffs' attempts to satisfy the presentment requirement for the purposes of judicial review under 42 U.S.C. § 405(g) cannot be considered a futile endeavor. Plaintiffs have now followed the appellate court's stringent directions to ensure that they have adequately presented their claims to the defendant agencies, and seek simply to put those allegations formally on the record.

Indeed, as the Supreme Court has recognized in a very similar circumstance, this situation is precisely the kind for which a supplemental complaint is appropriate. In a case challenging an aspect of the Medicare program, the Supreme Court rejected the Secretary's contention that a plaintiff had not met § 405(g)'s presentment requirement

because he did not file his application until after the complaint was filed.  *Mathews v. Diaz*, 426 U.S. 67, 75 (1976).  The court explained that the failure to file the application (which in that situation was the presentment) prior to filing the complaint was easily resolved: "A supplemental complaint in the District Court would have eliminated this jurisdictional issue; since the record discloses ... that the jurisdictional condition was satisfied, it is not too late, even now, to supplement the complaint to allege this fact."  *Id.*

In effect, the Court deemed that a supplemental complaint had been filed, and that complaint, with its allegations of presentment after the filing of the original complaint, was sufficient to cure the defect.  In the instant case, of course, plaintiffs are taking exactly the action that the Supreme Court stated that the *Diaz* plaintiff should have taken: filing a supplemental complaint to correct the defect.  *Diaz* is thus directly on point and controlling in allowing Medicare plaintiffs to cure a failure of presentment by taking action after the original complaint was filed.[5]

*Diaz* has been consistently followed as the lower courts have recognized the efficiency and fairness of allowing plaintiffs to cure jurisdictional defects through actions taken after the filing of the original complaint.[6]  Thus, relying on and quoting *Diaz*, Judge

---

[5] The Supreme Court also pointed out that allowing the filing of either a supplemental or amended pleading in this context serves "the statutory purpose of avoiding needless sacrifice to defective pleading ...."  *Id.* at 75 n. 9.

[6] See, *e.g., Mires v. United States*, 466 F.3d 1208, 1211-1212 (10th Cir. 2006) (jurisdictional deficiency in taxpayer's suit was cured by payment of outstanding taxes after filing of original complaint and then amending the complaint); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 365-366 (5th Cir. 2004) (court deems complaint amended to cure the jurisdictional defect because plaintiff registered the copyright after the complaint was filed); *Black v. Secretary of Health & Human Services*, 93 F.3d 781, 789-790 (Fed.Cir. 1996) (failure to meet the jurisdictional amount-in-controversy was cured by supplemental complaint that set out additional expenses incurred after filing of original complaint); *Wilson v. Westinghouse Electric Corp.*, 838 F.2d 286, 289-290 (8th Cir. 1988) (district court should have allowed filing of

12

Friedman of this Court rejected a federal agency's motion to dismiss on the ground that the plaintiff had failed to satisfy the jurisdictional requirement of waiting twenty days after making an FOIA request to file its complaint. *Judicial Watch, Inc. v. U.S. Dept. of Energy*, 191 F.Supp.2d 138, 139-140 (D.D.C. 2002). Instead, he allowed the plaintiff to file a supplemental complaint stating that no response to the FOIA request was received in the 20-day period, part of which took place after the filing of the original complaint. The court observed that "[t]o do otherwise would be to create precisely the kind of procedural mousetrap that the Federal Rules were designed to dismantle." *Id.* at 139 (internal quotation marks and citation omitted).

As in *Diaz* and its progeny, no purpose would be served by not allowing these plaintiffs now to allege the actions that they took after the Court of Appeals established the strict rule for presentment. Allowing the filing is especially appropriate in this case, for the case law prior to the Court of Appeals' ruling gave no indication that plaintiffs were required to take such specific action before seeking review under § 405(g). Having now complied with the Court of Appeals' directive, plaintiffs should be allowed to proceed to the merits of the case.

There exists no reason why the proposed supplemental and amended complaint should not be allowed. Given the policy favoring liberal amendment of complaints, that there is no prejudice to the defendant, and that allowing this matter to go forward will facilitate a full and timely disposition on the merits, this is an entirely appropriate instance for the Court to grant leave to supplement and amend.

---

supplemental complaint attesting to expiration of jurisdictionally required 60-day waiting period after filing of original complaint: "a supplemental complaint may cure the defect by alleging the subsequent fact which eliminates the jurisdictional bar").

**CONCLUSION**

For the reasons stated, plaintiffs' Motion for Leave to File Supplemental and Second Amended Complaint should be granted.

        Respectfully submitted,

        _____

        VICKI GOTTLICH
        D.C. Bar No. 937185
        PATRICIA B. NEMORE
        D.C. Bar No. 204446
        Center for Medicare Advocacy, Inc.
        1101 Vermont Avenue, N.W., Suite 1001
        Washington, D.C. 20005
        (202) 216-0028

        GILL DEFORD
        D.C. Bar No. 459280
        WEY-WEY KWOK
        D.C. Bar No. 461647
        JUDITH STEIN
        BRAD PLEBANI
        Center for Medicare Advocacy, Inc.
        P.O. Box 350
        Willimantic, CT 06226
        (860) 456-7790

        SALLY HART
        Center for Medicare Advocacy, Inc.
        2033 East Speedway Blvd., Suite 200
        Tucson, AZ 85719
        (520) 322-0126

        Attorneys for Plaintiff

DATED: August 27, 2007

**CERTIFICATE OF SERVICE**

      I, Michael Rubin, under the direction of counsel for the plaintiffs, Vicki Gottlich, certify that, on August 27, 2007, the Motion for Leave to File Supplemental and Second Amended Complaint was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                                         _____
                                                                           Michael Rubin