IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS GREY PANTHERS,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>MICHAEL LEAVITT,  )<br>)<br>Defendant.  )<br>_____ ) | Civil Action No. 06-1607-HHK |

**DEFENDANT'S EXHIBIT B**



# SOCIAL SECURITY



RECEIVED AUG 16 2007 Center for Medicare Advocacy

Office of the Regional Commissioner
26 Federal Plaza, Room 40-102
New York, NY 10278

August 13, 2007

Mr. Brad S. Plebani, Esq.
Deputy Director
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, Connecticut 06226

    Re:  Request for Waiver of Refund Recovery

Dear Mr. Plebani:

On May 4, 2007, you sent two letters to Michael J. Astrue, Commissioner of Social Security, concerning the erroneous refunds of Medicare Part D premiums that were sent in August 2006. You sent one letter on behalf of Ms. Lucy C. Loveall, an individual Medicare Part D participant, and one on behalf of Action Alliance of Senior Citizens and the Gray Panthers. For the reasons discussed below, we have determined that the erroneous refund that Ms. Loveall received does not constitute an overpayment of title II benefits that would be subject to waiver under section 204(b) of the Act.

## Background

As authorized by statute, the Social Security Administration (SSA) will withhold Medicare Part D premiums from the beneficiary's title II benefits at a beneficiary's request. In August 2006, due to an error in the Center for Medicare and Medicaid Services' (CMS) computer system, SSA mistakenly refunded Medicare Part D premiums to Ms. Loveall and other beneficiaries who had elected to have their Part D premiums withheld from their Social Security checks by SSA and paid to the prescription drug plan providers by CMS. The amount of the mistaken premium refund was paid in conjunction with the beneficiaries' monthly title II benefit checks. Ms. Loveall and the other beneficiaries owed these premiums to the prescription drug providers. CMS subsequently arranged to collect the erroneous premium refunds directly from Ms. Loveall and the other beneficiaries to satisfy their premium obligations, without the involvement of SSA.

Discussion

Section 204(a) of the Act states that "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this title, proper adjustment or recovery shall be made." Section 204(b) limits the scope of section 204(a) by providing that "[i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience." In 20 C.F.R. § 404.501(a), we define the term "overpayment" to include a payment in excess of the amount due the individual under title II of the Act. Section 204 makes no reference to any type of premium payments under title XVIII of the Act, nor does it refer to those provisions of title XVIII that authorize SSA to withhold Medicare premiums from an individual's title II benefits.[1]

As noted above, an individual receives an overpayment under section 204(a), which may be subject to the waiver provisions of section 204(b), when she receives "more . . . than the correct amount of payment . . . under this title." The erroneous Part D premium refund that Ms. Loveall received did not cause her to receive more than the correct amount of her monthly title II Social Security benefits. Rather, she received the correct amount of monthly title II benefits due her, as indicated on her Social Security record. In addition, the erroneous refund to Ms. Loveall of her Part D premium does not result in an obligation to repay a title II overpayment, but results in an obligation to pay her Part D premiums in order to retain her prescription drug coverage. We understand that before the premiums were refunded in error, CMS had made premium payments to private prescription drug plans on behalf of the Part D participants. After the premiums were refunded in error, CMS chose not to seek reimbursement from the private plans because its foremost concern was to prevent any break in coverage for the individuals. Thus, the erroneous premium refund resulted in an obligation to repay the Medicare Part D trust fund, not in an obligation to repay a title II overpayment.

Additionally, it would be anomalous to give those Part D beneficiaries who opt to pay premiums by way of title II benefit deductions greater rights than are enjoyed by Part D beneficiaries who pay premiums directly to the private insurance plans. Beneficiaries who pay premiums directly to their private plans have no right to request a waiver if they receive an erroneous premium refund, and must repay the premium in order to ensure continuous coverage. There is no justification for treating beneficiaries who opt to pay their premiums by benefit deductions differently. For these reasons, we find that the erroneous premium refund that Ms. Loveall received does not constitute an overpayment of title II benefits.

---

[1] The Program Operations Manual System ("POMS") provides a waiver right for erroneous refunds of Part A and Part B premiums. However, as the POMS explains, "the same rules and procedures pertaining to recovery of a monthly benefit overpayment (see GN 02250.150 – GN 02250.425) apply <u>even though the incorrect premium refund is not a benefit overpayment</u>." POMS HI 01001.330.C (emphasis added).

2

If you have any questions, have additional information for us to consider, or wish to discuss further, please call Gwen Jones Kelley, Acting Associate General Counsel for Program Law, at (410) 965-0495, Jeffrey Blair, Director of the Titles VIII and XVI Programs Division in the Office of Program Law, at (410) 965-3157, or Hedy Gordon, senior attorney in the Office of Program Law, at (410) 965-2103.

Sincerely,

Beatrice M. Disman
Chair, Medicare Planning and
Implementation Task Force