UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS | ) |
| 2740 N. Front Street | ) |
| Philadelphia, PA 19133 | ) |
| | ) |
| GRAY PANTHERS | ) C.A. No. 1:06 01607 HHK |
| 1612 K Street, NW, Suite 300 | ) |
| Washington, D.C. 20006 | ) |
| | ) |
| LUCY CAROLYN LOVEALL | ) |
| 728 N. Main Street | ) |
| Franklin, Kentucky 42131 | ) |
| Plaintiffs, | ) |
| | ) SUPPLEMENTAL |
| v. | ) AND SECOND |
| | ) AMENDED |
| MICHAEL LEAVITT, Secretary of Department | ) COMPLAINT  FOR |
| Of Health and Human Services | ) DECLARATORY, |
| 200 Independence Avenue, SW | ) INJUNCTIVE AND |
| Washington, D.C. 20201 | ) MANDAMUS RELIEF |
| | ) |
| and | ) |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of the Social Security Administration | ) |
| 6401 Security Blvd. | ) |
| Baltimore, Maryland 21235, | ) |
| Defendants. | ) |

_____ )

## I. **INTRODUCTION**

1.      This is an action against the Secretary of the Department of Health and

Human Services ("Secretary") and the Commissioner of the Social Security

Administration ("Commissioner") as the officials responsible for the federal

government's failure to inform hundreds of thousands of Medicare beneficiaries of their

right to seek waiver of recovery of premium refunds that were paid to these beneficiaries.

2.      Plaintiffs also seek to require the Defendants to offer oral hearings to beneficiaries who seek waiver prior to recovering any portion of the premiums that were paid to them.

3.      A Medicare processing error resulted in approximately 230,000 Medicare beneficiaries receiving refunds in their August 2006 Social Security checks for the premiums paid for their participation in a Medicare Part D drug plan.  By form letter sent out to each of these beneficiaries in late August or early September 2006, the beneficiaries were informed of the amount that had been incorrectly paid to them and of their obligation to return that amount.  Beneficiaries were given several options for returning the payment or requesting repayment by installment, with a deadline of September 30, 2006.  They were not informed of their right to request that recovery of the payment be waived and of how to make that request.

4.      Plaintiffs include organizations whose members include many Medicare beneficiaries who received these payments and who may qualify to have recovery of these payments waived, and which provide assistance to Medicare beneficiaries, and a Medicare beneficiary who received a refund of Part D premiums and a letter requesting repayment..  They challenge the Defendants' actions as violative of the Social Security Act, regulations, and POMS, and of the Due Process Clause of the Fifth Amendment.  They seek declaratory, injunctive, and mandamus relief requiring the Defendants to inform the affected beneficiaries of their right to seek waiver of recovery, which includes the right to a pre-recoupment oral hearing on the waiver request.

5.      Plaintiffs request a preliminary injunction requiring the Defendants to cease attempting to recover the premium payments that were incorrectly refunded, and to

repay to beneficiaries those amounts that have been recovered, until they send a new letter to beneficiaries explaining their right to seek waiver of recovery and extending the deadline to take action, including requesting waiver, until thirty days after that new letter is sent out.

## II.    JURISDICTION

6.    Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g), which is incorporated into the Medicare statute by 42 U.S.C. §§ 1395ff(b)(1)(A), 1395w-22(g)(5), and 1395w-104(h)(1), and also pursuant to 28 U.S.C. §§ 1331 and 1361.

## III.    PARTIES

7.    Plaintiff  ACTION ALLIANCE OF SENIOR CITIZENS (hereinafter, Action Alliance), with its principal office in Philadelphia, Pennsylvania and a membership throughout the Commonwealth of Pennsylvania, which includes many Medicare beneficiaries enrolled in Part D prescription drug plans, has as its mandate to accord to senior citizens lives of dignity and freedom from want and fear by providing education and advocacy on issues affecting the elderly.

8.    Plaintiff THE GRAY PANTHERS, with its principal office in Washington, D.C., is a national organization with 25 chapters located throughout the country.  It has a membership of about 20,000 people, the large majority of whom are Medicare beneficiaries enrolled in Part D prescription drug plans.

9.    Plaintiff LUCY CAROLYN LOVEALL of Franklin Kentucky is a 65-year old Medicare beneficiary who is enrolled in a Medicare Part D drug plan, who had premiums for her drug plan withdrawn from her Social Security Retirement check, who

received a refund of $161.70, and who received a letter from Defendant Leavitt

demanding repayment of the refund.

10.     Defendant MICHAEL O. LEAVITT is the Secretary of the Department of

Health and Human Services (HHS).  In that capacity he has responsibility for the conduct

and policies of HHS, including responsibility for the Centers for Medicare & Medicaid

Services (CMS), which administers the Medicare program.  He is sued in his official

capacity.

11.     Defendant MICHAEL J. ASTRUE is the Commissioner of the Social

Security Administration (SSA).  In that capacity he has responsibility for the withholding

of Medicare premiums from monthly Social Security benefits, including premiums for

the prescription drug program under Medicare Part D.  He is sued in his official capacity.

### IV.    LEGAL FRAMEWORK

#### A.    Medicare and the Part D prescription drug option

12.     Enacted in 1965 as Title XVIII of the Social Security Act, 42 U.S.C. §§

1395 *et seq.*, Medicare is funded by the federal government through beneficiary

premiums, payroll taxes, and general revenues, and provides health care coverage to 43

million eligible individuals who are either age 65 or over or have long-term disabilities or

specified medical conditions.  Through Parts A and B, Medicare provides coverage for

in-patient hospital stays, doctor and clinic visits, and certain other reasonable and

necessary services and items.  Through Part C, the Medicare Advantage program,

beneficiaries may opt to enroll in a managed care plan in lieu of the traditional fee-for-

service approach.

13.     Pursuant to a new Part D set out at 42 U.S.C. §§ 1395w *et seq*. and starting January 1, 2006, Medicare now offers access to prescription drug coverage.  The coverage is provided entirely through private prescription drug plans (PDPs) and Medicare Advantage plans (MA-PDs).

14.     Premiums to pay for beneficiaries' participation in the PDPs and MA-PDs may be but are not required to be deducted from their Social Security checks.

> ### B.     Waiver of recovery

15.     Federal benefit programs have statutory provisions that prohibit recovery of payments incorrectly made to beneficiaries when the beneficiary was not at fault and recovery either would be "against equity and good conscience" or would defeat the purposes of the statute.  When an overpayment of Social Security benefits authorized pursuant to Title II of the Social Security Act is made, recovery is prohibited by the waiver provision of that Title (42 U.S.C. § 404(b)) when beneficiaries satisfy the criteria set out in the previous sentence.  Social Security regulations repeat this prohibition against recovery in the delineated circumstances. 20 C.F.R. §§ 404.501, 404.506(a).

16.     Social Security regulations also require written notice of the right to waiver:

> Whenever an initial determination is made that more than the correct amount of payment has been made, and we seek adjustment or recovery of the overpayment, the individual from whom we are seeking adjustment or recovery is immediately notified. The notice includes:
>
> (a) The overpayment amount and how and when it occurred;
> …
>
> (e) An explanation of the right to request waiver of adjustment or recovery and the automatic scheduling of a file review and pre-recoupment hearing (commonly referred to as a personal conference) if a request for waiver cannot be approved after initial paper review;

(f) An explanation of the right to request reconsideration of the fact and/or amount of the overpayment determination;

(g) Instructions about the availability of forms for requesting reconsideration and waiver;

(h) An explanation that if the individual does not request waiver or reconsideration within 30 days of the date of the overpayment notice, adjustment or recovery of the overpayment will begin;

(i) A statement that an SSA office will help the individual complete and submit forms for appeal or waiver requests; and

(j) A statement that the individual receiving the notice should notify SSA promptly if reconsideration, waiver, a lesser rate of withholding, repayment by installments or cross-program adjustment is wanted.

20 C.F.R. § 404.502a

17.     The Social Security Administration has issued directives in its Program

Operations Manual System (POMS) when premiums deducted from Social Security

payments are incorrectly refunded.  The POMS states that

the individual will be notified of the amount he/she erroneously received, asked to return it, and told of his/her right to request relief from repayment of the incorrectly refunded amount.

….

Whether or not the enrollee may be excused from repayment depends on whether repayment of this amount would be against equity and good conscience or deprive the individual of funds that are reasonable and necessary for ordinary living expenses. This is the same test used in determining whether recovery of a benefit overpayment would defeat the purposes of Title II (Social Security).  Therefore, the same rules and procedures pertaining to recovery of a monthly benefit overpayment … apply even though the incorrect premium is not a benefit overpayment.

POMS, § HI 01001.330B., C. (posted at

https://s044a90.ssa.gov/apps10/poms.nsf/lnx/0601001330!opendocument).

18.     The courts interpreting 42 U.S.C. § 404(b), and provisions similar to it, have held that these mandatory waiver provisions require that the beneficiary be notified in writing of his right to waiver of the overpayment and have an opportunity for a pre-recoupment oral hearing before any recovery can be effected.  See, *e.g., Elliott v. Weinberger*, 564 F.2d 1219, 1235-1236 (9th Cir. 1977) (requiring notice), aff'd in part, rev'd in part on other grounds *sub nom. Califano v. Yamasaki*, 442 U.S. 682, 693-697 (1979) (requiring opportunity for pre-recoupment oral hearing).

## V.    FACTUAL STATEMENT

### A.    Defendant's actions precipitating this lawsuit

19.     For reasons that have not been explicitly stated, but that CMS refers to as "a processing error," about 230,000 beneficiaries who paid the premiums for their PDP or MA-PD plans via a deduction in their monthly Social Security checks received a refund in early August 2006 for those premiums in their Social Security checks or through direct deposit.

20.     By letter sent to each of these beneficiaries in late August or early September 2006, CMS informed each of them of the amount of the "incorrect payment" and provided several options for returning the full amount.  (A copy of the generic version of the letter is attached to this Complaint as Exhibit A.)  The letter further stated that "[y]ou should return this payment by September 30, 2006.  If returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months."  A toll-free telephone number was provided for those beneficiaries who "would like to discuss this option" of making installment payments.

21.     The letter does not mention the possibility of waiver of recovery, either by explicit use of that term, by a description of that term, or by any reference that could be construed to refer to waiver.  Nor does the letter in any way suggest how a beneficiary could request waiver of recovery.

22.     In addition to sending out the letter to the beneficiaries, CMS also sent out or posted on its website a "Tip Sheet" entitled "Information Partners Can Use to Help Beneficiaries with: PREMIUM WITHHOLD REFUND ISSUE".  The Tip Sheet informed CMS' Part D drug plan partners of the incorrect payment, of CMS' intention to collect it, of the letter that CMS was sending out to the beneficiaries, and of the ways that the partners could assist beneficiaries in repaying the refund.  Like the letter to beneficiaries, the Tip Sheet did not mention the possibility of waiver, explicitly or implicitly.

23.     Furthermore, CMS made available, either by sending or by posting on its website, a description of what had transpired that could be used by organizations for newsletters or other publications.  This document provided essentially the same information as in the letter to beneficiaries and in the Tip Sheet.  It did not make any mention of the possibility of waiver, explicitly or implicitly.

24.     Via an e-mail letter sent on August 30, 2006 to the CMS Administrator (Dr. Mark McClellan), Judith Stein, the director of the Center for Medicare Advocacy, Inc., whose employee-attorneys represent the plaintiffs in this case, informed him that the letter that CMS was sending out to the affected beneficiaries did not alert them to their right to waiver and requested that it be revised to include that information.  Ms. Stein was

subsequently contacted by an individual working for Dr. McClellan, who told her that the

letter would be sent out without information about the right to waiver.

25.    Via certified mail on May 4, 2007, Brad Plebani, the deputy director of the

Center for Medicare Advocacy, Inc., sent letters on behalf of the organizational plaintiffs

and Plaintiff LOVEALL to both Defendants, as well as to the CMS Deputy Administrator

(Leslie V. Norwalk). (Letters attached as Exhibit B).  Copies of the letters sent on behalf

of Plaintiff LOVEALL were sent by regular mail to CMS Acting COO (Charlene

Frizzera), DCS (the company contracted by CMS to collect repaid premiums), and CMS

Administrator for Region 4 (Roger Perez).  The letters informed these individuals that the

Defendants had failed to inform the affected beneficiaries of their right to seek waiver of

recovery of the erroneous payments and of how they could make a waiver request, in

violation of their rights under 42 U.S.C. § 404(b); 20 C.F.R. § 404.501 et seq.  The letters

requested that these individuals take necessary action to accord the beneficiaries their

rights pursuant to § 404(b), and, at a minimum, that a revised notice be sent to the

beneficiaries alerting them of their right to request waiver of recovery and of how to

make that request.

26.    Signed certifications confirm that the above letters were received by

Defendant ASTRUE and CMS Deputy Administrator, on May 7, 2007,  and by

Defendant LEAVITT on May 9, 2007. (Confirmations attached as Exhibit C).

27.    Plaintiffs' counsel received written responses from the SSA, dated May 11

and May 14, 2007, indicating that, "The Centers for Medicare & Medicaid Services has

jurisdiction over the matter you inquired about.  Therefore, we are referring your inquiry

to that Agency…for consideration."  (Letters attached as Exhibit D).  Plaintiffs' counsel

received a subsequent letter from the SSA, dated June 7, 2007, stating that the prior responses sent in May were in error, and that SSA was still considering plaintiffs' request and would provide a response in due course.  (Letter attached as Exhibit E).

28.    By letter dated July 16, 2007, Thomas Hutchinson (Director, Medicare Plan Payment Group) responded on behalf of Leslie Norwalk (CMS Deputy Administrator) to plaintiffs' requests.  The letter informs "HHS has no authority to act under that provision [42 U.S.C. § 404(b)], which is not part of the Medicare statute."  It further states that: "The Social Security Administration (SSA) administers § 404(b).  We understand that, per SSA's June 7, 2007 letter to you, SSA intends to provide a response to your waiver request."  (Letter attached as Exhibit F).

29.    SSA sent another letter to plaintiffs' counsel, dated August 2, 2007, which again indicates that "The Centers for Medicare & Medicaid Services has jurisdiction over the matter you inquired about.  Therefore, we are referring your inquiry to that Agency…for consideration."  (Letter attached as Exhibit G).

30.    However, in a letter sent to plaintiffs' counsel dated August 13, 2007, SSA announced its determination that "the erroneous refund that Ms. Loveall received does not constitute an overpayment of title II benefits that would be subject to waiver under section 204(b) of the Act."  The letter does not mention the availability of a process by which plaintiffs could formally appeal this determination.  (Letter attached as Exhibit H).

31.    As CMS has admitted, the premium refund was its error.  Accordingly, by definition, all of the approximately 230,000 beneficiaries who received the "incorrect payment" were without fault.

32.     On information and belief, for many, probably most, of the approximately 230,000 Medicare beneficiaries who received the "incorrect payment," it would be against equity and good conscience, or would defeat the purposes of Title II or Title XVIII, to recover that payment.

### B.     Plaintiffs

33.      Plaintiff Action Alliance organizes grassroots senior groups throughout the Commonwealth of Pennsylvania and includes over 110,000 people in its membership and affiliated clubs.  A large percentage of these are Medicare beneficiaries, and most of them are enrolled in a Part D-authorized plan.  Action Alliance has an annual budget of $80,000.

34.     Action Alliance has knowledge that individuals in Pennsylvania received the letter from CMS concerning incorrect payments and has had to evaluate how best to help its members and others affected in that state to understand that they have options not presented to them in the letter, and to advise and educate them as to the scope and meaning of their rights.  Some Action Alliance members did receive the erroneous refund and either did or did not repay the amount as directed by CMS.  However, regardless of whether they repaid, they would like to have their rights to seek waiver of recovery and notice of that right accorded to them.

35.     As a result of the defendants' failure to inform beneficiaries of their rights, members of Action Alliance will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.

36.    Plaintiff Gray Panthers is a national organization with 25 chapters located throughout the country.  Its mission is to organize people of all ages to fight for social and economic justice, with a specific focus on organizing around health care issues which affect its entire membership.  About 90 percent of its 20,000 members are Medicare beneficiaries, and 80 percent of these are enrolled in Part D-authorized plans.

37.    Gray Panthers is active in promoting information about Medicare among its members and among the wider population of older people throughout the country and in trying to redress difficulties Medicare beneficiaries have with Part D. In particular, a California chapter has a grant to provide outreach and education about Medicare Part D throughout the state of California.

38.    Gray Panthers has been contacted about Part D problems by members and the general public who do not understand the information and advice they have been provided. Gray Panthers is trying to dispense information and advice to its members and others about what they should do.

39.    As a result of defendants' actions, members of the Gray Panthers will not have adequate information to make informed decisions about what steps to take with respect to the payment that they received and may repay money to which they are legally entitled under the waiver rules.  Some Gray Panthers members did receive the erroneous refund and either did or did not repay the amount as directed by CMS.  However, regardless of whether they repaid, they would like to have their rights to seek waiver of recovery and notice of that right accorded to them

40.  Plaintiff Lucy Carolyn Loveall is a 65-year old married resident of Franklin, Kentucky.  She receives Social Security benefits and is enrolled in a Medicare Part D

plan.  She elected to have the premiums for her Part D plan withdrawn from her Social

Security check.  Her monthly premium is $23.15.

41.  Mrs. Loveall receives $859 per month in Social Security retirement benefits.

She also receives a check from her deceased first husband's account of $445.22.  Her

husband's retirement benefits are $909.90 per month.  They have no other income.  Their

total monthly income is $2,214.12.

42.  Mrs. Loveall received a direct deposit from Social Security into her checking

account for $161.70 in August 2006.  She received a letter from the Social Security

Administration, dated August 10, 2006, telling her that the money was for a

reimbursement due to her.  (Letter Attached as Exhibit I).  The social worker at her senior

center contacted Medicare and Social Security on her behalf and was told that because of

the insurance companies, the premiums would no longer be deducted from the Social

Security check.  Mrs. Loveall was not told that she would have to repay the money, so

she spent the money.

43.  Mrs. Loveall received a letter from CMS dated August 29, 2006, telling her

that she would have to repay the $161.70 by September 30, 2006.  The letter offered four

options for repayment, but did not inform Mrs. Loveall that she could request a waiver of

the premium refund.  (Letter Attached as Exhibit J).

44.  Mrs. Loveall and her husband have monthly expenses of $3067, which

exceed their monthly income by roughly $800. Mrs. Loveall has a large monthly loan

payment.  She took out the loan to pay to have her teeth removed and to have dentures

made; she has no dental insurance.

45. Mrs. Loveall has several chronic conditions including high cholesterol and heart problems. She is a cancer survivor. Both she and her husband have numerous drugs prescribed for them for which they no longer have the prescriptions filled and no longer take because they cannot afford the cost. Their doctors often prescribe medications that are not covered under their Medicare Part D Plan.

46. As a result of their household and medical expenses, Mrs. Loveall cannot afford to repay the $161.70. She did not pay back the money by September 20, 2006, as demanded by the Secretary and has not paid it to this day. As her letters to the defendants indicate, she believes that she is entitled to waiver of recovery.

## VI. INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS

47. Plaintiffs will suffer irreparable injury by reason of defendants' actions complained of herein. Because of the defendants' failure to inform Mrs. Loveall and members of the plaintiff organizations that they may request waiver of repayment of the refund, they have no way of knowing that they may not be required to repay, and they will be deprived of income needed to pay for food or other necessities.

48. Plaintiffs have no adequate remedy at law. Only the declaratory, injunctive, and mandamus relief which this Court can provide will fully redress the wrongs done to plaintiffs.

49. Plaintiffs have a clear right to the relief sought. There is no other adequate remedy available to correct an otherwise unreviewable defect not related to a claim for benefits. The defendant has a plainly defined and nondiscretionary duty to provide the relief which plaintiffs seek.

## VII. FIRST CAUSE OF ACTION:

**VIOLATION OF THE SOCIAL SECURITY ACT, REGULATIONS
AND POMS**

50.    Defendants' refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates 42 U.S.C. § 404(b), 20 C.F.R. § 404.501 et seq, and POMS, § HI 01001.330B.

## VIII.    SECOND CAUSE OF ACTION:
## VIOLATION OF THE DUE PROCESS CLAUSE

51.    Defendants' refusal to provide written notice to beneficiaries who incorrectly received a premium refund in August 2006 of their right to seek waiver of repayment of that refund violates the Due Process Clause of the Fifth Amendment to the Constitution.

## IX.    THIRD CAUSE OF ACTION:
## VIOLATION OF THE SOCIAL SECURITY ACT, REGULATIONS
## AND POMS

52.    Defendants' failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment and who may be entitled to waiver of that recovery an oral hearing prior to recovery violates the waiver rules of 42 U.S.C. § 404(b), 20 C.F.R. § 404.501 et seq, and POMS, § HI 01001.330C.

## X.    FOURTH CAUSE OF ACTION:
## VIOLATION OF THE DUE PROCESS CLAUSE

53.    Defendants' failure to offer Medicare beneficiaries who are subject to recovery of an incorrect payment, and who may be entitled to waiver of that recovery, an oral hearing prior to recovery violates the Due Process Clause of the Fifth Amendment to the Constitution.

## XI.    PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that this Court:

1.    Assume jurisdiction over this action.

2.    Declare that defendants' refusal to send written notice to Medicare beneficiaries who received an incorrect premium refund in early August 2006 of their right to seek waiver of recovery, and of how to effect that right, violates the Social Security Act, regulations, and the POMS, and the Due Process Clause of the Fifth Amendment.

3.    Declare that defendants' failure to offer Medicare beneficiaries who are subject to recovery of a payment incorrectly received a pre-recovery oral hearing on the issue of whether recovery should be waived violates the Social Security Act, regulations, and the POMS, and the Due Process Clause of the Fifth Amendment.

4.    Grant and issue preliminary and permanent injunctions, and/or an order of mandamus, that

a) prohibits defendants, their successors in office, their agents, employees, and all persons acting in concert with them, from further attempting to recover premium payments incorrectly refunded in early August 2006 unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right;

b) requires defendants, their successors in office, their agents, employees, and all persons acting in concert with them, to immediately return any amounts that beneficiaries have repaid, or that they will repay (unless and until written notice is sent to all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right); and

c) prohibits defendants, their successors in office, their agents, employees, and all persons acting in concert with them from requiring beneficiaries either to repay the amounts incorrectly paid to them or to request waiver of recovery, until thirty (30) days after the date on which the Defendants send out a written notice advising all those who received incorrectly refunded premium payments of their right to waiver of recovery and of how to effect that right.

5.     Grant and issue a permanent injunction, and/or an order of mandamus, that requires the Defendants to offer all Medicare beneficiaries who are subject to recovery of an incorrectly made payment the right to an oral hearing prior to recovery on the issue of whether the recovery should be waived.

Plaintiffs pray in addition:

6.     For costs of the suit herein.

7.     For reasonable attorneys' fees pursuant to 28 U.S.C. § 2412.

8.     For such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____

VICKI GOTTLICH
D.C. Bar No. 937185
PATRICIA B. NEMORE
D.C. Bar No. 204446
Center for Medicare Advocacy, Inc.
1101 Vermont Avenue, N.W.,
Suite 1001
Washington, D.C. 20005
(202) 216-0028

GILL DEFORD
D.C. Bar No. 459280
WEY-WEY KWOK

D.C. Bar No. 461647
JUDITH STEIN
BRAD PLEBANI
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790

SALLY HART
Center for Medicare Advocacy, Inc.
2033 East Speedway Blvd.
Suite 200
Tucson, AZ 85719
(520) 322-0126

Attorneys for Plaintiff

DATED:  August 27, 2007