UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
ACTION ALLIANCE OF SENIOR CITIZENS,        )
GRAY PANTHERS, LUCY CAROLYN LOVEALL,       )
                                           )
                    Plaintiffs,            )
                                           )
            v.                             )   C.A. No. 06-1607 (HHK)
                                           )
MICHAEL LEAVITT, Secretary of Department   )
of Health and Human Services; MICHAEL J. ASTRUE, )
Commissioner of the Social Security Administration, )
                                           )
                    Defendants.            )
_____       )
```

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 7(h) and 56.1, plaintiffs hereby state, in support of their Motion for Summary Judgment, that there is no issue to be tried as to the following material facts:

1. Premiums owed by Medicare beneficiaries for prescription drugs provided through a Medicare Part D prescription drug plan may be paid, at a Part D enrollee's option, by having them withheld by the Social Security Administration (SSA) from their monthly Social Security checks. [Declaration of Leslie Norwalk (docket # 16), ¶ 3.]

2. Once premium payments are withheld from Social Security benefits, they are credited to the Part D prescription drug plan. [Norwalk Dec., ¶ 3.]

3. Withholding of the premium amount from a Social Security beneficiary represents payment of the premium by the beneficiary. [Program Operations Manual System ("POMS"), § HI 01001.330A.]

4. In 2006, approximately 230,000 Medicare beneficiaries enrolled in the Part D prescription drug program who had elected to pay their premiums by having them withheld from their monthly Social Security checks were erroneously removed from "withhold" status. [Norwalk Dec. ¶ 4.]

5. As a result of this processing error, in August 2006 SSA sent each of these Part D enrollees payments that reflected the amounts of one or more premium payments previously withheld. [Norwalk Dec., ¶ 4.]

6. These payments were made either via a separate check from SSA or as part of the direct deposit of their August 2006 Title II benefits. [Exs. A and J to Pls. Supplemental and Second Amended Complaint ("the New Complaint") (docket # 47).]

7. The actual premiums for these Part D enrollees had already been deducted and paid to their prescription drug plans. [Letter of Beatrice Disman of SSA (Aug. 13, 2007) at 2 (Ex. H to the New Complaint).]

8. The Centers for Medicare & Medicaid Services (CMS) of the Department of Health & Human Services did not try to recover the premium payments from the prescription drug plans after the erroneous payments were made to the Part D enrollees by SSA. [Disman Letter at 2.]

9. Shortly before SSA sent the erroneous payments to the Part D enrollees, SSA sent them a letter that stated, in relevant part, that "[t]his is the money that you are due." [Letter to Lucy Loveall from SSA (undated) (attached as Ex. I to the New Complaint).]

10. After the erroneous payments were sent, CMS sent a letter to the affected Part D enrollees that contradicted the letter from SSA by stating that the payments had been made in error. [This letter is discussed in the first sentence of Exhibits A and J to the

New Complaint.]

11. CMS posted on its website, and sent to its Part D "partners", a "Tip Sheet" entitled "Information Partners Can Use to Help Beneficiaries with: PREMIUM WITHHOLD REFUND ISSUE." The Tip Sheet explained that those who had received the erroneous payments had to repay them and that they would be receiving a letter in early September "letting them know the process for returning the overpayment." [Ex. A to Pls. Motion for a Temporary Restraining Order and for a Preliminary Injunction (docket # 3).]

12. CMS also posted and distributed a release that newsletters and other publications could publish in which similar information appeared. [Ex. B to Pls. Motion for a Temporary Restraining Order and for a Preliminary Injunction (docket # 3).]

13. In late August and early September 2006, CMS sent a demand letter to the affected enrollees in which it acknowledged that "Medicare [had] made a processing error that resulted in you receiving" the erroneous payment, explained how the erroneous payment should be repaid, and demanded that the recipient "return this payment by September 30, 2006" but did not state the consequences for not returning it. [Exs. A and J to the New Complaint.]

14. In informing the affected enrollees of how they should make the repayment, the letter from CMS stated that it should be returned "so that it can be used to pay your premiums as you intended." [Exs. A and J to the New Complaint.]

15. Although the letter acknowledged that repayment might cause a "hardship" and that beneficiaries could request to repay the erroneous payments in installments, neither the letter nor any other communication from CMS or SSA offered or recognized a

3

right to waiver of recovery, or notified the affected enrollees that they could request waiver of recovery. [Exs. A and J to the New Complaint.]

16. As of late September 2006, about 111,000 enrollees had returned the erroneous payments in full. [Norwalk Dec., ¶ 4.]

17. Plaintiff Lucy Carolyn Loveall, who was 65 years old in September 2006, received the letter from SSA informing her that the extra payment of $161.70 that she would be receiving was hers, but she still confirmed her right to the money by contacting both SSA and the Medicare agency. Since "[n]othing was said about having to repay the money," she spent it. [Ex. I to the New Complaint; Declaration of Lucy C. Loveall (docket # 14), ¶¶ 1, 6.]

18. Ms. Loveall and her husband have monthly expenses significantly above their fixed monthly Social Security benefits, which is their sole source of income. This deficit is largely caused by her need to repay money that she had borrowed because she has no dental insurance and had to have her teeth removed and replaced with dentures. She cannot afford to repay the erroneous amount sent her by SSA because of these expenses. To repay "would cause a serious hardship" to her husband and her. [Loveall Dec., ¶¶ 7, 8.]

19. Plaintiff Action Alliance of Senior Citizens, a membership organization in Pennsylvania, has over 110,000 members. A large percentage of the members are Medicare beneficiaries, and most of those are enrolled in Part D. [Declaration of Pedro Rodriguez (docket # 8), ¶ 2.]

20. Plaintiff Gray Panthers, a national membership organization, has about 20,000 members. About 90% of its members are Medicare beneficiaries, and about 80%

of those beneficiaries are enrolled in Part D.  [Declaration of Susan Murany (docket # 8),

¶ 2.]

                                      Respectfully submitted,

DATED: December 10, 2007          /s/ Vicki Gottlich

                                      VICKI GOTTLICH
                                      D.C. Bar No. 937185
                                      PATRICIA B. NEMORE
                                      D.C. Bar No. 204446
                                      Center for Medicare Advocacy, Inc.
                                      1025 Connecticut Ave., N.W., Suite 709
                                      Washington, D.C. 20036
                                      (202) 293-5760

                                      GILL DEFORD
                                      D.C. Bar No. 459280
                                      WEY-WEY KWOK
                                      D.C. Bar No. 461647
                                      JUDITH STEIN
                                      BRAD PLEBANI
                                      Center for Medicare Advocacy, Inc.
                                      P.O. Box 350
                                      Willimantic, CT 06226
                                      (860) 456-7790

                                      SALLY HART
                                      Center for Medicare Advocacy, Inc.
                                      2033 East Speedway Blvd., Suite 200
                                      Tucson, AZ 85719
                                      (520) 322-0126

                                      Attorneys for Plaintiffs