IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   Civil Action No. 06-1607-HHK |
| MICHAEL LEAVITT, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SUPPLEMENTAL AND SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs' colorful opposition memorandum does little more than obfuscate the straightforward issues of law raised in defendants' motion to dismiss. Most of their arguments have already been addressed in defendants' opening memorandum. Only a brief reply is therefore necessary.

With respect to subject-matter jurisdiction, the organizational plaintiffs, the Action Alliance of Senior Citizens and the Gray Panthers, do not allege that a claim by any of their members has "been presented" to the Commissioner of Social Security, Action Alliance of Senior Citizens v. Leavitt, 483 F.3d 852, 857 (D.C. Cir. 2007) (quoting Mathews v. Eldridge, 424 U.S. 319, 328 (1976) (emphasis added in Action Alliance), "much less" that the Commissioner "has rendered any decision, final or otherwise," on such a claim. Id. at 856 (quoting Weinberger v. Salfi, 422 U.S. 749, 764 (1975)). The failure to satisfy this "'absolute prerequisite' to review," id. at 857, precludes the existence of subject-matter jurisdiction over any claim that could now be pursued on behalf of their members by the two organizational plaintiffs. Simply put, associations

cannot maintain an action as representatives of members who themselves have no claim as to which the Court has jurisdiction.  See Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Supplemental and Second Amended Complaint ("Def. Mem.") at 21-23.  And to the extent that there hypothetically may be members who have met the jurisdictional requirements of 42 U.S.C. § 405(g), their participation would be necessary to ascertain the existence of those facts.  Def. Mem. at 21-23.  The only plaintiff legitimately before the Court at all, therefore, is the individual plaintiff, Lucy C. Loveall.

      Ms. Loveall, in turn, has failed to state a claim for relief because the recovery-waiver statute at 42 U.S.C. § 404 simply does not apply to erroneous refunds of Medicare Part D prescription-drug premiums.  She did not receive "more . . . than the correct amount of payment" under Title II of the Social Security Act, 42 U.S.C. § 404(a)(1), merely because she received an "erroneous refund[] of Medicare premiums."  Action Alliance, 483 F.3d at 861.  The recovery-waiver provision at 42 U.S.C. § 404(b) therefore does not apply.  Def. Mem. at 27-33.  In addition, plaintiffs remain unable to identify a rational reason why Congress would have conferred special protections against the recovery of erroneous refunds to Medicare Part D enrollees who chose to pay premiums by means of Social Security withholdings, but not to enrollees who chose to pay premiums directly or by electronic transfers from bank accounts or credit cards.  Id. at 33-35.  The decision of the Commissioner on this issue – which was not available to this Court at the time it rendered its ruling on the motion for a preliminary injunction – must therefore be given deference, and the complaint should be dismissed.  If plaintiffs perceive a need for special hardship protections in the circumstances of this case, their remedy is legislative, not judicial.

**ARGUMENT**

I. **THE CLAIMS OF ACTION ALLIANCE AND THE GRAY PANTHERS SHOULD BE DISMISSED FOR FAILURE TO MEET JURISDICTIONAL PREREQUISITES.**

With respect to subject-matter jurisdiction, the parties agree that, for an association to maintain a suit as representative of its members, the action must be "of the sort that would make out a <u>justiciable case</u> had the members themselves brought suit."  <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975) (emphasis added); <u>see</u> Memorandum in Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 33 (quoting <u>Warth</u> with different emphasis).  For members of the plaintiff associations to have a case within the jurisdiction of this Court to adjudicate, it is certainly <u>necessary</u> for them to have Article III "standing in their own right." <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 65-66 (1997).  But, in this particular case, Article III standing is not a <u>sufficient</u> condition, by itself, to establish subject-matter jurisdiction.  The Court of Appeals for this Circuit has held that plaintiffs' members must <u>also</u> satisfy the jurisdictional prerequisites of 42 U.S.C. § 405(g) by having "<u>presented</u>" the issue to the Commissioner, <u>Action Alliance</u>, 483 F.3d at 857 (quoting <u>Mathews</u>, 424 U.S. at 328) (emphasis added in <u>Action Alliance</u>), and by having received an adverse "decision, final or otherwise, review of which is sought."  <u>Id</u>. at 856 (quoting <u>Salfi</u>, 422 U.S. at 764).  In the absence of such presentment and decision, plaintiffs' members may or may not have an injury in the constitutional sense, but they do not have a case that can be decided by this Court, because the Court does not have subject-matter jurisdiction to entertain their claim. And an association cannot pursue, on their behalf, claims over which the Court does not have jurisdiction.

Plaintiffs' reliance on International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Brock, 477 U.S. 274 (1986), for the proposition that statutory prerequisites to subject-matter jurisdiction are irrelevant to whether an association can maintain an action as the representative of its members' interests, Pl. Mem. at 34, profoundly misreads the decision.  Properly read, Brock stands for exactly the opposite proposition.

In that case, a union sought to represent the interests of its members in challenging the Secretary of Labor's interpretation of a provision in the Trade Act of 1974, 19 U.S.C. § 2101, et seq.  The relevant statute provided certain federal benefits "as a supplement to state unemployment insurance benefits" to workers who were "adversely affected by imports."  Brock, 477 U.S. at 277.  Claims for this supplemental benefit were processed by state unemployment agencies and were subject to judicial review "in the same manner and to the same extent as determinations under the applicable State law."  Id. (quoting 19 U.S.C. § 2311(d)).  The issue in the case was whether this statutory scheme foreclosed federal-question jurisdiction under 28 U.S.C. § 1331.  If it did, subject-matter jurisdiction over the associational claims of the unions would have been lacking.  If it did not, the union could assert claims of its members, so long as the claims were otherwise live.

The Supreme Court held that the "Trade Act provision does not foreclose review in federal court of every claim relating to the Act's application by federal and state officials," because, "[w]hile the Act vested state courts with exclusive jurisdiction over claims challenging a state agency's application of federal guidelines to the benefit claims of individual employees, there is no indication that Congress intended § 2311(d) to deprive federal district courts of subject-matter jurisdiction under 28 U.S.C. § 1331(a) (1976 ed.) to hear statutory or constitutional challenges to the federal guidelines themselves."  Brock, 477 U.S. at 284-85.  "As

we find § 2311(d) to pose no bar to petitioners' claims," the Court continued, "we see no jurisdictional impediment to this suit in federal court challenging a federal official's implementation of a federal statute." Id. at 285-86.  The Court therefore held that "such a direct challenge is not only proper, but appropriate," id. at 286, at least to the extent that the union sought to represent the interests of workers who "have the live interest in challenging the Labor Department guidelines that would support standing" because they have still-pending claims for benefits that had not yet been reduced to a final decision through the state administrative and judicial processes.  Id. at 284.

The logical inference, of course, is that if 19 U.S.C. § 2311(d) (or some other statute) had been construed so as to bar federal-question jurisdiction, then the union would have been unable to maintain its suit in Brock in a representational capacity.  And, that, of course, is precisely the case here.  As noted above, the Court of Appeals for this Circuit has already held that federal-question jurisdiction under 28 U.S.C. § 1331 over the claims at issue here is barred by 42 U.S.C. § 405(h).  That is why the claims of plaintiffs' members had to be channeled through the presentment process to obtain an adverse "decision, final or otherwise, review of which is sought."  Action Alliance, 483 F.3d at 856 (quoting Salfi, 422 U.S. at 764).  Where such a jurisdictional restriction exists, the analysis in Brock compels the conclusion that an association cannot maintain suit on behalf of members who have not themselves met the statutory requirements for judicial review.

Even if the organizational plaintiffs had alleged that any of their members had met the jurisdictional requirements of 42 U.S.C. § 405(g), however, associational standing still would be lacking because the participation of those members would be necessary to establish the fact of the members' compliance with jurisdictional prerequisites.  Def. Mem. at 22-23 (citing AMA v.

United Healthcare Corp., 2007WL 1771498 at *21 (S.D.N.Y. June 18, 2007)). To be sure, the ability of an organization to maintain a suit on behalf of its members may be defeated by the need for individual participation to establish other elements necessary for associational standing, such as the fact or extent of injury. See, e.g., Long Term Care Pharmacy Alliance v. UnitedHealth Group, Inc., 498 F. Supp. 2d 187, 193-96 (D.D.C. 2007); see also See Pl. Mem. at 35 n.25 (citing other cases for same proposition). But injury-related issues are not the only circumstance where individual participation may be necessary. The need for individual participation in order to establish that statutory – as well as constitutional – prerequisites for jurisdiction have been met is simply another such circumstance. Plaintiffs cite no authority to the contrary.

Finally, plaintiffs' reliance on Shalala v. Illinois Council on Long Term Care, 529 U.S. 1 (2000), for the proposition that associations can pursue administrative remedies under 42 U.S.C. § 405(g) in their own right, Pl. Mem. at 36, is misplaced for two reasons. First, it makes no difference whether the plaintiff associations could hypothetically satisfy the jurisdictional requirements of § 405(g) because this Court has already held that they lack standing to pursue claims in their own right. Action Alliance of Senior Citizens v. Leavitt, 456 F. Supp. 2d. 11, 16 n.4 (D.D.C. 2006), rev'd on other grounds, 483 F.3d 852 (D.C. Cir. 2007). Second, nothing in Illinois Council suggests that an association can pursue claims under 42 U.S.C. § 405(g).

The introductory passage in Illinois Council on which plaintiffs rely – which states that an "association or its members must proceed instead through the special review channel that the Medicare statutes create" before a claim can be brought in district court, 529 U.S. at 5 – does not imply a holding that an association can assert the rights of a Social Security beneficiary under § 405(g) or any analogous statute. It merely states that presentment is always necessary and exhaustion is ordinarily necessary before any plaintiff can sue in federal court. Indeed, later in

-6-

the decision, the Supreme Court implicitly recognized that an association could not pursue an analogous administrative remedy on behalf of its members under 42 U.S.C. § 1395cc(h), but found that this circumstance did not excuse the need for the association's members to meet its jurisdictional requirements in order for a justiciable case to be before the Court.

Illinois Council involved challenges to various policies used by the Secretary of Health and Human Services to enforce Medicare quality standards in nursing homes. An association of nursing homes brought the suit, and it attempted to argue that, for various reasons, denial of subject-matter jurisdiction before the issues had been channeled through the administrative review process established by Congress under 42 U.S.C. § 1395cc(h) effectively "would mean no review at all," Illinois Council, 529 U.S. at 19, and would therefore open the door for a suit to be brought under 28 U.S.C. § 1331 under the analysis in Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667 (1986). In the last of its arguments, the plaintiff contended that, "because it is an association, . . . it cannot take advantage of the special review channel, for the statute authorizes review through that channel only at the request of a 'dissatisfied' 'institution or agency.'" Id. at 24 (quoting 42 U.S.C. § 1395cc(h)(1)). The Supreme Court did not take exception to the proposition that the association could not take advantage of the special review channel available to its member nursing homes. But it held that the lack of an administrative remedy for the association did not, as a practical matter, result in the effective foreclosure of all judicial review (so as to trigger the Michigan Academy analyis) because "[t]he Council speaks only on behalf of its member institutions" and the "statutes that create the special review channel adequately protect" those institutions' "rights to review." Id. at 24.

Properly read, therefore, Illinois Council does not stand for the proposition that it is unnecessary for individual members to pursue administrative remedies, so long as an association

pursues those remedies in its own right. It stands for the proposition that the inability of associations to pursue remedies through 42 U.S.C. § 1395cc(h) – or 42 U.S.C. § 405(g) – does not get the associations into court under the Michigan Academy analysis, because the members themselves could satisfy jurisdictional prerequisites and thereby prevent the effective foreclosure of all judicial review. The same is true here. The only person who is alleged to have met the presentment-and-decision requirements of § 405(g) is the individual plaintiff, Ms. Loveall, and, accordingly, she is the only plaintiff over whose claims this Court has subject-matter jurisdiction. The claims of the associations should be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM BECAUSE ERRONEOUS REFUNDS OF MEDICARE PRESCRIPTION-DRUG PREMIUMS ARE NOT OVERPAYMENTS OF SOCIAL SECURITY BENEFITS.

With respect to the merits of Ms. Loveall's claim (and the claims of the organizational plaintiffs, as well), little more need be said. Plaintiffs' observations about the relative complexity of Social Security and Medicaid statutes notwithstanding, Pl. Mem. at 12-14, the deferential standards under which this Court must review agency interpretations of statutes and regulations committed to their administration are well settled. The Commissioner's construction of the scope of 42 U.S.C. § 404 must be upheld so long as it is not "unambiguously" forbidden by the plain language of the statute, Barnhart v. Walton, 535 U.S. 212, 218 (2002), and otherwise falls "within the bounds of reasonable interpretation." Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 453 (1999). His interpretation of his own regulations is entitled to even more deference and must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citation omitted). Contrary to plaintiffs' view, it is hard to see how this Court, at the preliminary-injunction stage of these proceedings last year, could possibly have found the

-8-

Commissioner's statutory and regulatory interpretations wanting under these standards. The Commissioner was not even a party to the litigation at that time, and the document setting forth his statutory and regulatory interpretations – the Letter of Beatrice M. Disman dated August 13, 2007 ("Disman Letter") (Pl. Ex. H) (attached to second amended complaint) – had not yet been written. To the extent that plaintiffs are correct that this Court based its decision on the reasonableness of the Commissioner's not-yet-articulated construction, however, defendants respectfully ask the Court to reconsider in connection with this motion to dismiss.

      Plaintiffs' opening contention – that the "waiver statute" in 42 U.S.C. § 404(b) "does not refer to Title II payments, but merely to the fact that 'more than the correct amount of payment has been made,'" Pl. Mem. at 19 n.15 – conflicts with the rule of construction that "[s]tatutes must 'be read as a whole,'" United States v. Atlantic Research Corp., 127 S. Ct. 2331, 2336 (2007) (quoting King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991)), especially when construing "adjacent" subsections with "remarkably similar structures." Id. The opportunity to request a waiver of recovery obviously does not arise under 42 U.S.C. § 404 whenever "more than the correct amount of payment has been made," 42 U.S.C. § 404(b), in some free-floating or abstract sense. See Pl. Mem. at 18. It arises only in the specific circumstance where "more . . . than the correct amount of payment has been made to any person under this subchapter," 42 U.S.C. § 404(a)(1) (emphasis added), that is, under Title II of the Social Security Act. 42 U.S.C. §§ 401-434. Indeed, if § 404(b) were deemed to be divorced from § 404(a) in the manner urged by plaintiffs, it would apply to any circumstances where the federal government paid more than the correct amount of money to anyone. That cannot possibly be the case.

      As defendants explained in their opening memorandum, the daunting task that confronts plaintiffs here is to convince this Court to embrace the very proposition which the Court of

Appeals for this Circuit declined to accept when the preliminary injunction was on appeal: that the "erroneous refunds of Medicare premiums" which occurred in 2006, Action Alliance, 483 F.3d at 861, were not really "refunds of the actual premiums," but rather were "payments" erroneously made under Title II of the Social Security Act that just happened to be equal to "the amounts of the premiums." Pl. Mem. at 7 (emphasis in original). Even if the question were still open to dispute, however, the distinction that plaintiffs seek to draw is a meaningless one. A transfer of money to Part D enrollees that was made by the government "in the mistaken belief that these portions of the beneficiaries' Social Security payments should not have been withheld," id., is nothing more or less than an erroneous refund of the premium. Money is fungible. A refund in the amount of the premium is the same as a refund of the premium itself.

      Moreover, the centerpiece of plaintiffs' statutory argument – that "[t]here is no other possible source for the payments" made to recipients of the erroneous refunds than Title II trust funds, Pl. Mem. at 19 – is simply incorrect. The erroneous refunds came out of Medicare funds. Declaration of Maria Montilla at ¶ 4 (attached as Def. Ex. A to defendants' opposition to plaintiffs' motion for summary judgment, filed this date). Thus, the erroneous premium refund did not result in an obligation "to repay a title II overpayment," Disman Letter at 2; it resulted in an obligation to return the erroneous refund of a Medicare prescription-drug premium. The refund was not an overpayment of Title II funds subject to the recovery-waiver provision in 42 U.S.C. § 404(b). At the very least, it was not unreasonable for the Commissioner – speaking through the Disman decisional letter – to construe the statutory and regulatory scheme in this manner.

      Plaintiffs' next contention – that the erroneous refunds of premiums must be deemed to be erroneous payments of Title II benefits because "the premiums themselves had been passed on to

the plans and there was no attempt to recover them," Pl. Mem. at 19 – improperly draws legal consequences from mere historical contingencies that make no legal difference.  If the Secretary had not learned of the error immediately, he might very well have demanded the premium money back from the plans.  It is only a matter of fortuity that the problem was caught quickly enough that such an additional complication could be avoided, and the Secretary could simply recover the erroneous refunds from the enrollees, leave the premium money in the hands of the private insurers where it belonged, and ensure continued prescription-drug coverage of all affected enrollees.  But the choice of the Secretary to effect the most practical corrective measures hardly changes the nature of the transaction, that is, that the enrollees received an erroneous refund of premiums that they intended to have transferred to the private insurers and the Secretary sought to recover that money when he realized the mistake.

   Plaintiffs' final contention – that an erroneous payment "of this type" is recognized in the Commissioner's Program Operation Manual Systems ("POMS Manual") as a overpayment of Title II benefits, Pl. Mem. at 20 – is wrong for two reasons.  First, as was explained in defendants' opening memorandum, the POMS Manual does not even apply to erroneous refunds made under Medicare Part C or Part D.  It applies only to erroneous refunds made under Part A or Part B.  Moreover, the POMS Manual expressly states that recovery-waiver protections were extended under Part A and Part B, "even though the incorrect premium payment is not a benefit overpayment."  Id. at § HI 01001.330.C.  Whether the Commissioner's extension of recovery-waiver rights can be justified under legal authority other than 42 U.S.C. § 404(b) or whether it is simply an instance of unauthorized government generosity, see Def. Mem. at 38-41, need not be resolved here.  The only relevant point is that nothing in the POMS Manual suggests that the recovery-waiver protections for erroneous refunds of Part A and Part B premiums were

"anchored in § 404(b)." Pl. Mem. at 26. The POMS Manual itself says exactly the opposite: that such erroneous refunds of Part A and Part B premiums are <u>not</u> overpayments of Title II benefits and, accordingly, cannot possibly be anchored in § 404(b). The legal authority for extending the protections would have to be found, if at all, in another source of law (such as the government's common-law right to recover overpayments coupled with its statutory right to compromise such claims in the public interest, <u>see</u> Def. Mem. at 15-16.)

In addition, there are perfectly justifiable reasons for the Secretary to treat erroneous refunds of Part C and Part D premiums (which are paid to private insurers) differently from the way the Commissioner has chosen to treat erroneous refunds of Part A and Part B premiums (which are paid to the federal government). As defendants explained in their opening memorandum, under Medicare Parts A and B, the federal government makes direct payment to providers of health-care services. The premiums belong to the government. Individuals who receive Social Security or certain other benefits are <u>required</u> to pay their premiums via deductions from those benefits. <u>See</u> 42 U.S.C. § 1395s. Because the premiums are owed to the government, this payment method inures directly to the government's benefit. Under Parts C and D, by contrast, the government does not make payment to health-care providers. Instead, the government makes periodic payments to private insurers, which agree to provide health-care services (Part C) or prescription-drug coverage (Part D). Premiums are not owed to the government, but to the private insurers. Payment of premiums via the Social Security-deduction method is not mandatory, but a convenience that is offered "at the enrollee's option." 42 U.S.C. § 1395w-24(d)(2)(A) (Part C); <u>id</u>. § 1395w-113(c) (Part D). This payment method does not benefit the government, which simply transmits the premium payments to the private insurer on the enrollee's behalf. <u>See id</u>. § 1395w-24(d)(2) (Part C); <u>id</u>. § 1395w-116(b)(3) (Part D).

The different premium structures of Parts A-B and Parts C-D likewise explain the different treatment of erroneous premium refunds. As defendants' opening memorandum explained, Part C and Part D participants are not required to pay premiums via the Social Security-deduction method, but may pay premiums directly to the private insurer or may have the premiums electronically transferred from bank accounts and credit cards. Def. Mem. at 14. Indeed, of the 23 million Part D participants nationwide, only about 4.8 million elect to pay premiums via the Social-Security deduction method. See id. at 17. The regime plaintiffs envision would confer recovery-waiver rights not enjoyed by the Part D population at large on the subset that happens to pay premiums via the Social Security-deduction method.

Plaintiffs have articulated no legitimate justification for treating erroneous refunds of Part D premiums differently for enrollees who choose Social-Security withholding as the means of payment and enrollees who choose direct payment or electronic transfer from bank accounts and credit cards. And there certainly is no basis for concluding that Congress, in enacting the Part D provisions, mandated such differential treatment. In the absence of any indication of such congressional intent, the POMS Manual provides a slender basis for concluding that recovery-waiver protections must be extended under 42 U.S.C. § 404(b) to the recipients of erroneous refunds of Medicare prescription-drug premiums. It certainly cannot override the express interpretation of the Commissioner now set forth in the Disman decisional letter.

**CONCLUSION**

For the reasons stated, defendants' motion to dismiss should be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: |  |
| JAMES C. STANSEL | JEFFREY S. BUCHOLTZ |
| Acting General Counsel | Acting Assistant Attorney General |
|  |  |
| CAROL J. BENNETT | JEFFREY A. TAYLOR |
| Acting Associate General Counsel | United States Attorney |
|  |  |
| MARK D. POLSTON | /s/ Peter Robbins |
| Deputy Associate | RICHARD G. LEPLEY |
| General Counsel for Litigation | PETER ROBBINS |
|  | United States Department of Justice |
| MARCUS H. CHRIST | 20 Massachusetts Avenue, N.W., Room 7142 |
| LAWRENCE J. HARDER | Washington, D.C. 20530 |
| Supervisory Trial Attorneys | Tel: (202) 514-3953 |
| Department of Health |  |
| and Human Services | Attorneys for Defendants |

DAVID BLACK
General Counsel

THOMAS CRAWLEY
Deputy General Counsel

GWEN JONES KELLEY
Acting Associate General Counsel
Office of Program Law

EILEEN FARMER
HEDY GORDON
Attorneys
Office of the General Counsel
Social Security Administration