UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ACTION ALLIANCE OF SENIOR CITIZENS, et al., <br><br>                Plaintiffs,<br><br>                v.<br><br>CHARLES E. JOHNSON, Acting Secretary of Department of Health and Human Services, et al.<br><br>                Defendants. | Civil Action 06-01607 (HHK) |

**MEMORANDUM OPINION**

Action Alliance of Senior Citizens ("Action Alliance"), the Gray Panthers, and Lucy Carolyn Loveall (together, "Plaintiffs") bring this action against defendants Charles E. Johnson ("Secretary") in his official capacity as Acting Secretary of the Department of Health and Human Services ("HHS") and Michael J. Astrue ("Commissioner") in his official capacity as Commissioner of the Social Security Administration ("SSA") (together, "Defendants"). Plaintiffs bring their claims in response to the Secretary's efforts to recover erroneous Medicare premium payments sent to approximately 230,000 participants in the Medicare Part D Prescription Drug Plan ("Part D") including Loveall and participants belonging to the Action Alliance or the Gray Panthers (together, "Medicare Participants"). Plaintiffs seek injunctive, declaratory, and mandamus relief requiring the Secretary to provide the Medicare Participants with notice of their putative right to seek a waiver of recovery, a period within which to exercise their rights, and a hearing. For those Medicare Participants who have returned the premiums, Plaintiffs seek a court

order that would require the Secretary to return those funds to those Medicare Participants until they have been notified of and given an opportunity to request the aforementioned waiver.

Before the court are Defendants' motion to dismiss the complaint [#49], and Plaintiffs' cross-motion for summary judgment [#50].  Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that Defendants' motion should be granted and Plaintiffs' motion should be denied.

## I. BACKGROUND

The background facts concerning the Medicare program, Medicare Part D specifically, and the facts giving rise to this litigation along with its procedural history are thoroughly set forth in the D.C. Circuit's opinion in this case:[1]

> Medicare Part D, established by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066, offers subsidized prescription drug insurance coverage. 42 U.S.C. § 1395w-101(a)(1). Whereas under Medicare Parts A and B the government pays providers on participants' behalf for goods or services received, under Part D the government contracts for and subsidizes insurance plans offered by private, third-party insurers. *Id.* at § 1395w-115.
>
> Part D participants pay monthly premiums to their insurers. *See id.* § 1395w-113(a). Most make these payments directly, but about 20% have opted to have the [SSA] deduct the amount of their Part D premium from their monthly benefits under Title II of the Social Security Act and transmit that sum, on the participant's behalf, to the insurer. *Id*. §§ 1395w-116(b)(3) & 1395w-24(d)(2)(A); *see also* 42 C.F.R. §§ 423.293(a) & 422.262(f) (2006). [Qualifying low-income participants may have their premiums subsidized in full or in part by the government. 42 U.S.C. § 1395w-114.]

---

[1] On September 27, 2006, this court issued an order granting the Plaintiffs' motion for a preliminary injunction and denying the Defendants' motion to dismiss. *Action Alliance of Senior Citizens v. Leavitt*, 456 F. Supp. 2d 11 (D.D.C. 2006) ("Action Alliance I").  The U.S. Court of Appeals for the D.C. Circuit vacated that order and remanded the case. *Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852 (D.C. Cir. 2007) ("Action Alliance II").  After the case was remanded, a supplemental and second amended complaint was filed that included the Commissioner and Loveall, neither of whom were parties to this action in the original complaint.

The SSA, which plaintiffs have not sued, administers Old-Age, Survivor, and Disability Insurance benefits under Title II of the Social Security Act; [HHS] administers the various Medicare programs found under Title XVIII of that Act. Since 1994 the SSA, directed by the [Commissioner], has been independent of HHS. *See* Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464; 42 U.S.C. §§ 401-434 (Title II); *id.* §§ 1395-1395hhh (Title XVIII).

In a monumental gaffe in early August 2006, the SSA wrote to some 230,000 participants, stating "[w]e will no longer deduct money for your health plan premium(s) from your monthly benefits." The letter also said, without further explanation, that the addressee would be receiving a check in a specified amount, coinciding with the recipient's premium for the just-past month. The average payment was $215, for a total of some $47 million. The parties agree these payments were all made in error. In early September, the Secretary requested repayment of the funds by the end of that month, but indicated that "[i]f returning the amount in full presents you with a hardship, you may request to make monthly installment payments for as many as seven months." The Secretary's letter also stated (accurately) that despite the mistaken payment to the insured, "prescription drug coverage will continue uninterrupted."

On September 15, Action Alliance and the Gray Panthers . . ., advocacy organizations whose membership includes many Part D participants, filed suit in district court seeking injunctive, declaratory, and mandamus relief on statutory and constitutional grounds. (The plaintiffs later amended their complaint to add Lucy Carolyn Loveall, a Part D participant who received a check for $161.70, a sum which she spent and states she is now unable to repay.) The complaint rested in part on 42 U.S.C. § 1395gg, which allows the government to recover funds where "more than the correct amount is paid under th[e] [Medicare] subchapter . . . for items or services furnished an individual," § 1395gg(b), but provides for government waiver of this recovery:

> There shall be no adjustment as provided in subsection (b) of this section (nor shall there be recovery) in any case where the incorrect payment has been made . . . with respect to an individual who is without fault . . . if such adjustment (or recovery) would defeat the purposes of subchapter II [Old-Age, Survivors, and Disability Insurance] or subchapter XVIII [Medicare] of this chapter or would be against equity and good conscience.

42 U.S.C. § 1395gg(c).

The Alliance asserted that Part D participants who received erroneous payments were entitled, under § 1395gg, to "written notice . . . of their right to seek waiver of

repayment" and an oral hearing prior to recovery of such payments. The district court rejected this claim, noting that § 1395gg applies only to payments for "items or services" (such as under Medicare Parts A and B), and thus that its waiver provision did not encompass erroneous *premium* refunds. *Action Alliance I*, 456 F. Supp. 2d at 18.

But the court observed that Medicare Part A and B participants who authorize SSA to withhold their premiums under those parts do enjoy a waiver right for erroneous premium refunds. Internal SSA policy guidelines, in the form of its Program Operations Manual System ("POMS"), create such a right on the basis of Title II's general waiver provision, 42 U.S.C. § 404(b). *Action Alliance I*, 456 F. Supp. 2d at 18-20; *see also* Social Security Administration, Program Operations Manual System § HI 01001.330.A.

Section 404 addresses adjustment or recovery of incorrect payments to Title II (Social Security) beneficiaries "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this [Title II] subchapter." 42 U.S.C. § 404(a). Section 404(b) goes on to say:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

*Id*. § 404(b).

> Although the POMS was silent as to waiver for erroneous refunds of Part D premiums, the district court [concluded] that the "statutory scheme" required that Part D beneficiaries receive the same treatment as those under Parts A and B. *Action Alliance I*, 456 F. Supp. 2d at 20. [Therefore, the district court granted Plaintiffs' motion for a preliminary injunction and] ordered the Secretary to *re*-return the erroneous payments to Part D participants who had repaid them and to notify all recipients of a right to request a hardship waiver.

*Action Alliance II*, 483 F.3d at 854-55 (internal record citations omitted) (alteration in original).

Defendants appealed, and the D.C. Circuit vacated this court's preliminary injunction order and remanded the case. With respect to this court's finding of a meritorious waiver claim under 42 U.S.C. § 404(b), the D.C. Circuit held that this court lacked jurisdiction to consider the

claim because Plaintiffs did not present it to the Commissioner before seeking judicial review as required by 42 U.S.C. § 405(g)-(h) and because the existence of an administrative remedy precluded mandamus jurisdiction. *See Action Alliance II*, 483 F.3d at 856-58 (citing *Weinberger v. Salfi*, 422 U.S. 749 (1975)). With respect to Plaintiffs' waiver claim under 42 U.S.C. § 1395gg, the D.C. Circuit agreed with this court in holding that the claim lacked merit because "by its plain terms, 1395gg applies to overpayments to a 'provider of services' for 'items or services furnished an individual.' It has nothing to do with erroneous refunds of Medicare premiums." *Action Alliance II*, 483 F.3d at 860-61.

Following the D.C. Circuit's decision and in an apparent effort to meet the jurisdictional requirements set forth in that decision with respect to a waiver claim under 42 U.S.C. § 404(b), Plaintiffs' counsel sent a separate letter from each of the plaintiffs to the Secretary and the Commissioner asking them to notify the Medicare Participants of their right to request a waiver under 42 U.S.C. § 404(b) and how to exercise that right. (*See* Pl's. Second Am. Compl. [#47], Ex. B.) On August 16, 2007, Plaintiffs received a response from Beatrice M. Disman, Chair of the SSA's Medicare Planning and Implementation Task Force ("Chair") denying their requests. (*See id*., Ex. H.) Specifically, the Chair reasoned that 42 U.S.C. § 404(b) did not apply to the erroneous refunds of Part D premiums because such refunds did not cause Plaintiffs to receive more than the correct amount of Title II social security benefits; rather, Plaintiffs received the correct amount of Title II benefits. (*See id.*)

Thereafter, Plaintiffs filed their Second Amended Complaint [#47]. In that complaint, Plaintiffs contend that Defendants' refusal to provide written notice to Medicare Participants of their right to seek a waiver of repayment and Defendants' failure to offer Medicare Participants an

oral hearing prior to such recovery violate 42 U.S.C. § 404(b), 20 C.F.R. § 404.501 *et seq.*, POMS § HI 01001.330B, and the Due Process Clause.

## II. ANALYSIS

The briefs of the parties raise two principal issues. First, whether this court lacks subject matter jurisdiction over the claims raised by Action Alliance and the Gray Panthers because they failed to meet the presentment requirement.[2] Second, whether the 42 U.S.C. § 404(b) waiver provision applies to the erroneous refunds of Part D premiums, which are at issue in this case.[3] The court will address these issues in turn.

A.   **The Court Has Subject Matter Jurisdiction Over The Claims Raised By The Association Plaintiffs Action Alliance and the Gray Panthers.**

Defendants contend that the court lacks subject matter jurisdiction over the claims of the two association plaintiffs, Action Alliance and the Gray Panthers, because these two plaintiffs have not satisfied the requirement that they present their claims to the Commissioner before seeking judicial review. *See* 42 U.S.C. §§ 405(g)-(h); *Action Alliance II*, 483 F.3d at 856-58 (relying on *Weinberger*, 422 U.S. at 756, 763-64). Specifically, Defendants contend that the letters that Action Alliance and the Gray Panthers sent to the Commissioner did not satisfy the presentment requirement because they were from the associations rather than their members, (Pl's. Second Am. Compl. [#47], Ex. B), and the court has held that neither association has

---

[2] Defendants concede that the court has subject matter jurisdiction over Loveall's claim, and the court agrees.

[3] The court rejects Plaintiffs' efforts to re-characterize the erroneous Part D premium refunds as anything other than premium refunds. *See Action Alliance II*, 483 F.3d at 860-61 (holding that 42 U.S.C. 1395gg had nothing to do with the "erroneous refunds of Medicare premiums" at issue in this case); *Action Alliance I*, 456 F. Supp. 2d *en passim* (adopting Plaintiffs' initial characterization of the erroneous payments as Medicare Part D premium refunds).

organizational standing. *Action Alliance I*, 456 F. Supp. 2d at 16 n.4. Although this court has held that Action Alliance and the Gray Panthers have representational standing,[4] *see Action Alliance I*, 456 F. Supp. 2d at 16, Defendants still contend that the associations cannot establish subject matter jurisdiction in their representational capacities because none of their members have presented a claim to the Commissioner. Plaintiffs counter that Defendants' position would have the court conflate the presentment requirement with the representational standing analysis, and that whether individual members have presented a claim to the Commissioner cannot disturb the court's holding that Action Alliance and the Gray Panthers have representational standing. *See id*. Defendants rejoin, in essence, that Plaintiffs have missed the point and in doing so confused the issue. According to Defendants, representational standing alone is not enough for Action Alliance and the Gray Panthers to maintain this action. In addition to representational standing, Defendants point out that the D.C. Circuit has identified a separate and independent hurdle that Plaintiffs must clear—the presentment requirement. According to Defendants, the association plaintiffs cannot meet the presentment requirement because none of their members have presented a claim to the Commissioner and received a final decision rejecting that claim.

The issue before the court is not whether Action Alliance and the Gray Panthers have standing but rather whether they have satisfied the presentment requirement and thereby established this court's subject matter jurisdiction over their claims. Plaintiffs bear the burden of establishing subject matter jurisdiction. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). As the D.C. Circuit observed in vacating this court's previous order, the "starting point[s]

---

[4] To the extent that Defendants seek to reargue the court's holding that Action Alliance and the Gray Panthers have representational standing, the court rejects their attempt.

for analysis" of the subject matter jurisdiction question here are 42 U.S.C. §§ 405(g)-(h), which contain the "nonwaivable" requirement that Plaintiffs present their claims to the Commissioner before seeking judicial review. *See Action Alliance II*, 483 F.3d at 856-57 (citing *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). This presentment requirement serves as an "absolute prerequisite" to review and precludes jurisdiction. *Id*. at 857 (citing *Nat'l Kidney Patients Ass'n v. Sullivan*, 958 F.2d 1127, 1129-30 (D.C. Cir. 1992)).

The court finds that Action Alliance and the Gray Panthers have satisfied the presentment requirement; therefore, this court has subject matter jurisdiction over their claims. The case that decides the issue is *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) ("*Illinois Council*"). In *Illinois Council*, an association representing several nursing homes filed suit against the Secretary invoking federal question jurisdiction and alleging that certain Medicare-related regulations violated various statutes and the Constitution. *Id*. at 5. The district court dismissed the suit finding that it lacked subject matter jurisdiction. *Id*. Specifically, the district court held that the plaintiff association could not establish subject matter jurisdiction because it had not presented a claim to the Commissioner before seeking judicial review as required by 42 U.S.C. §§ 405(g)-(h). *Id*. Before the Supreme Court, the plaintiff association contended that it should be excused from satisfying the presentment requirement because "[as] an association, not an individual, it [could] not take advantage of the special review channel" for presenting a claim. *Id*. at 24. The Court rejected this argument finding that the association "speaks only on behalf of its member[s] . . . and [i]t is essentially their rights to review that are at stake." *Id*. Therefore, the Court held that either "[t]he association or its members" may satisfy the presentment requirement before seeking judicial review. *Id*. at 5. Thus, under *Illinois*

*Council*, Action Alliance and the Gray Panthers may satisfy the presentment requirement of 42 U.S.C. § 404(b), and their letters to the Commissioner did so. Accordingly, the court holds that it has subject matter jurisdiction over the claims raised by Action Alliance and the Gray Panthers.

**B.     The 42 U.S.C. § 404(b) Right To Seek A Waiver Does Not Apply To Erroneous Refunds of Medicare Premiums.**

Plaintiffs contend that the Medicare Participants are entitled to notice of their right to seek waiver of repayment of the erroneous premium refunds, the opportunity to exercise their rights, and a hearing. Defendants counter that no statute or regulation provides the Medicare Participants with the right to seek a waiver of recovery. The issue boils down to a question of statutory interpretation.

The parties and the court agree that in reviewing this question of statutory interpretation, the court must follow the two-step inquiry set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Under *Chevron*, the court first inquires as to "whether Congress has directly spoken to the precise question at issue." *Id*. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. Second, "[if] the court determines [that] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute . . . ." *Id*. at 843. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute." *Id*. If the agency's interpretation "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, [the court gives] the administrator's judgment 'controlling weight.'"

*NationsBank of N.C. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995) (quoting *Chevron,* 467 U.S. at 844). The court may disregard the agency's interpretation, however, where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971); *Kent County v. EPA*, 963 F.2d 391, 393 (D.C. Cir. 1992).

Proceeding to the first step of the *Chevron* analysis, the court asks whether Congress has spoken to the precise question at issue; namely, whether the Medicare Participants have a right to request a waiver of repayment of the erroneous Medicare Part D premium refunds. Plaintiffs' purported right to request a waiver is rooted in provisions of the Social Security statute; namely in "Subchapter II. Federal Old-Age, Survivors, and Disability Insurance Benefits" ("Title II"). Therein, Plaintiffs rely on § 404, which "addresses adjustment or recovery of incorrect payments to *Title II* (Social Security) beneficiaries." *Action Alliance II*, 483 F.3d at 855 (emphasis added). The provisions of § 404 grant the Commissioner the authority to recover erroneous payments "whenever [he] . . . finds that more or less than the correct amount of payment has been made to any person under *this subchapter* [Title II] . . . ." 42 U.S.C. § 404(a) (emphasis added). Subsection (b), however, provides a limitation on the Commissioner's authority to recover:

> [i]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of *this subchapter* [Title II] or would be against equity and good conscience.

42 U.S.C. § 404(b) (emphasis added). The right to seek a waiver of recovery arises from the limitation in § 404(b). The question here is not whether the right to seek a waiver under § 404(b)

exists in the abstract but rather whether that waiver right applies to the erroneous Part D premium refunds in this case.

Defendants contend that the Medicare Participants are not entitled to seek a waiver of recovery because § 404(b) applies only to payments under "this subchapter [Title II]," whereas the erroneous Part D premium refunds were made under "Subchapter XVIII. Health Insurance for Aged and Disabled" ("Title XVIII"), not under Title II.  Plaintiffs counter that § 404(b) is not limited to Title II, and even if it were so limited, § 404(b) would apply to the erroneous Part D premium refunds at issue in this case because those refunds were provided to the Medicare Participants from Title II funds.

The court's interpretation of §404 begins with the plain "text and the presumption that Congress 'says in a statute what it means and means in a statute what it says there.'" *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).  The text here could not be clearer: under § 404(a)-(b), the Commissioner's right to recover and the concomitant right to seek a waiver of recovery are limited to payments made "under this subchapter [Title II]." The statutory text provides no indication that Congress intended the provisions to apply to any subchapters other than Title II.[5] Indeed, Title XVIII does not incorporate § 404 as it does numerous other provisions of Title II:

> The provisions of sections 406 and 416(j) of [42 U.S.C.], and of subsections (a), (d), (e), (h), (i), (j), (k), and (l) of section 405 of [42 U.S.C.], shall also apply with respect to this subchapter [Title XVIII] to the same extent as they are applicable with respect

---

[5] The court need look no further than the statute at issue in *Action Alliance I* for the proposition that Congress says so when it intends the waiver right to reach beyond Title II.  42 U.S.C. § 1395gg(c) ("There shall be no . . . recovery . . . where the incorrect payment has been made . . . with respect to an individual who is without fault . . . if such . . . recovery would defeat the purposes of subchapter II or *subchapter XVIII* . . . .") (emphasis added).

11

>to subchapter II of this chapter [Title II], except that . . . any reference therein to the Commissioner . . . shall be considered a reference to the Secretary . . . .").

42 U.S.C. § 1395ii; *cf. Action Alliance II*, 483 F.3d at 859 (noting that "§ 405(g) is conspicuously absent from the list of Title II provisions incorporated into Medicare by § 1395ii.")

To the extent that Plaintiffs invite the court to read a waiver right into § 404(b) that is broader than the recovery right in § 404(a) simply because § 404(b) refers to "the purposes of [Title II]" in contrast to § 404(a) which refers to "payments . . . under [Title II]," the court refuses that invitation. To accept it would be to divorce § 404(b) from § 404(a) and in doing so contravene the canon of statutory construction that "a statute is to be read as a whole," *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991), especially where construing adjacent subsections with remarkably similar structures, *see United States v. Atl. Research Corp.*, 551 U.S. 128, [2336] (2007). Because the court finds that § 404(b) applies only to payments under Title II, the court cannot sustain Plaintiffs' contention that they are entitled to seek a waiver of recovery for the erroneous Part D premium refunds they received under Title XVIII.

The court also rejects Plaintiffs' effort to bring Part D premium refunds within the gambit of Title II and thus within the scope of § 404(b) by arguing that the refunds must have been debited from Title II funds considering that the Secretary already had paid the premiums to private insurers. Although the parties expend much effort tracing the source of the erroneously-paid funds in distinguishing between an "overpayment" and a "premium refund," the source of the funds has no bearing on the court's determination because the statute does not contemplate the precise source of the funds as being indicative of legal rights. The erroneous refunds were distributed under the authority of Title XVIII, which governs Medicare programs administered by

HHS, *see* 42 U.S.C. §§ 1395-1395hhh, independently of the SSA, *see id.* §§ 901 *et seq.*, and provides the statutory authority for the SSA to deduct Part D premiums from Social Security benefits, *id.* § 1395w-113(c)(1) (incorporating by reference *id.* § 1395w-24(d)(2)(A)).  Even if the erroneous Part D refunds were made from Title II funds, the SSA made them under the authority of Title XVIII, not Title II; thus, they fall outside the scope of § 404(b).[6]

Because the court finds that "the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842.  Accordingly, the court need not proceed to the second step of the *Chevron* analysis nor need it consider Plaintiffs' arguments based on the C.F.R. or the POMS.  Finally, the court rejects Plaintiffs' claim that Defendants violated Due Process by failing to provide the Medicare Participants with notice of their waiver right because Plaintiffs can identify no protected liberty or property interest stemming from the putative waiver right considering the court's holding that the Medicare Participants have no right to seek a § 404(b) waiver in the first place.

---

[6] The court reaches this conclusion notwithstanding its previous observation that the POMS modeled its waiver for Medicare Parts A and B on the general waiver provision in § 404(b), *see Action Alliance I*, 456 F. Supp. 2d at 18, and notwithstanding its previous holding that Plaintiffs demonstrated a substantial likelihood of success on the merits of their claim that the POMS waiver extends to Part D, *see id.* at 23.  Although both this court and the D.C. Circuit observed that the POMS waiver was modeled after § 404(b), neither court held that the POMS waiver was authorized by § 404(b) nor that plaintiffs were entitled to seek a waiver under § 404(b).  *See Action Alliance II*, 483 F.3d at 855; *Action Alliance I*, 456 F. Supp. 2d at 18.

## III.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [#49] is **GRANTED**, and Plaintiffs' motion for summary judgment [#50] is **DENIED**.  An appropriate order accompanies this Memorandum Opinion.

Henry H. Kennedy, Jr.<br>
United States District Judge